# Whitmore *v.* Dwelling House Ins. Co., Appellant.♦

*Notice by mail—Deposit of letter in post office—Presumption of receipt.*

It is well settled that the fact of depositing in the post office a properly addressed, prepaid letter raises a natural presumption, founded on experience, that it reached its destination by due course of mail; in other words, it is prima facie evidence that it was received by the person to whom it was addressed, but that prima facie proof may be rebutted by evidence showing that it was not received.

*Insurance—Sufficiency of proofs of loss.*

When a statement of loss is furnished within the stipulated time, and there is nothing to show that it was not in good faith intended as a compliance with the terms of the policy, it is the duty of the underwriter, if it means to rely upon failure to comply, to give prompt notice of its objection, specifying the defects therein, in order that the insured may have an opportunity of correcting them. Failure to so return the statement is some evidence for the jury of a waiver of strict compliance: Gould v. Dwelling House Ins. Co., 134 Pa. 570.

*Insurance—Ownership of insured property—Question of fact.*

The defence was set up to an action on a policy that plaintiff was not the sole and unconditional owner of the land on which the house insured stood. There was evidence tending to show that by an amicable agreement with his coheirs, plaintiff became sole owner of that portion of the land on which the house in question was erected. The testimony was conflicting.

*Held,* that the question involved, being one of fact and having been properly submitted to the jury, their finding in favor of the plaintiff was conclusive.

Argued Feb. 23, 1892. Appeal, No. 450, Jan. T., 1891, by defendant, from judgment of C. P. Lackawanna Co., Nov. T., 1888, No. 95, on verdict for plaintiff, Daniel Whitmore. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Assumpsit on a policy of insurance.

At the trial before GUNSTER, J., the evidence was to the following effect: On April 15, 1888, property on which plain-

tiff held a policy in defendant company was totally destroyed by fire. There was no dispute as to the value of the property, which was admittedly in excess of the amount of insurance. Plaintiff produced testimony to show that within ten days after the loss he prepared an itemized statement of the loss, showing it to the agent of defendant in Carbondale, who said it was all right. He deposited it in the mail, duly stamped and properly addressed to the office of defendant, Boston, Mass., at Carbondale. Some weeks later, having received no answer to his communication from the defendant, plaintiff caused to be prepared and mailed to defendant a second itemized statement of loss. At the trial, having been notified to produce both these papers, defendant denied receiving the former statement, and objected to the later statement when offered in evidence by plaintiff as incompetent and irrelevant, because not furnished within thirty days from the date of the loss. The defendant alleged that a recovery by the plaintiff was barred under a provision of the policy providing that it should be void " if the interest of the insured be other than unconditional and sole ownership," when, in point of fact, plaintiff was not such owner in fee simple of the ground upon which the building stood.

Plaintiff made the following offer:

" Counsel for plaintiff offers to show by the witness on the stand that in the year 1880, before his building was erected, the lot of land upon which said building was erected was allotted, parted and divided to the plaintiff by an agreement with his two brothers and sister, who were his cotenants, and an agreement was entered into between them by parol, that said piece of land should be the property of the plaintiff, and that he could erect a dwelling-house and other buildings thereon ; that in pursuance of said agreement the plaintiff made valuable improvements upon said land by erecting thereon the dwelling-house insured by the defendant's policy, and other outbuildings thereon ; that the plaintiff immediately after said allotment and agreement entered into possession of said property, and has continued there ever since, and was there at the time said policy was issued, and the loss sustained.

" Counsel for defendant objects to this as not rebuttal, irrelevant, incompetent and immaterial. This witness, the plaintiff, having already testified and it having been admitted by coun-

sel, and placed upon the record that the interest that the plaintiff had in the property was as tenant in common with his two brothers and sister.

" The Court. (To counsel for defendant.) You say you had witnesses here yesterday to testify on this point, which you have sent home.

" Counsel for defendant. Yes, sir.

" The Court. If the evidence surprises you, I will continue the case. I will admit the evidence.

" Exception noted for defendant, at whose request a bill is sealed." [15]

The court charged, in part, as follows:

" Now, it is one of the contested facts in this case, whether the plaintiff gave this notice or not, whether he gave the company this written notice as required by the policy. You have the testimony, upon that question, of the plaintiff himself, that he made out a statement of his loss, and that he mailed it to the company at Boston. He is corroborated by the testimony of Elmer Lee, that he saw the plaintiff prepare the item of his loss; that they met Mr. Lathrope and showed the envelope to him, and that Mr. Lathrope said it was all right, and that he saw these papers mailed. The mailing of a letter or a written instrument, in an envelope properly addressed and stamped, is some evidence that the party to whom it is addressed received it. It is not conclusive evidence, but it is evidence which the court must submit to the jury, to be considered in the light of other facts and circumstances of the case. It is not conclusive evidence, therefore, gentlemen of the jury, but it is some evidence that the party to whom the letter is addressed, when it is properly addressed and stamped when it is mailed, that the party to whom it is addressed received it. But that may be rebutted, and it may be rebutted by the testimony of the party to whom it was addressed, if he is a competent witness. So you have simply the fact that it was mailed. I do not wish to say that that is a fact that it was mailed, but you have the testimony that this statement of his loss was mailed. That is all the evidence that the company ever received it. But the plaintiff must show, not only that he prepared this statement, but that the company did receive it. The burden of showing that is upon him.

" [Now, upon the part of the defence, it is alleged that these proofs of loss, as they have been called, this sworn statement, was never received by them] [7] ; that the plaintiff never furnished them with it. You have the testimony of Mr. Melchert, who says that during the time and including these two dates, the 12th of April to the 9th of June, he was in attendance in the office of the company and in charge of the mail; that he was there constantly during the business hours, and that he had charge of the mail, and that they received no such paper as is testified to by the plaintiff and Mr. Lee. You have also the testimony of Mr. Lathrope. He testifies positively that the only proofs, or alleged proofs, that were ever produced to him by the plaintiff were those which were inclosed in this envelope, which Mr. Melchert testifies he received on the 9th of June, and which admittedly contain what has been referred to as proofs of loss that were made out at a later date. You have the testimony of Mr. Lathrope that that is the only time that the plaintiff ever came to him with any alleged proofs of loss. The plaintiff himself, if I recall his testimony correctly, testifies to having gone to Mr. Lathrope but once with what he calls proofs or statement of loss. Of course, if the papers which Mr. Whitmore prepared, were the papers that were not received by the company until the 9th of June, then they came too late; they were not served on the company within thirty days, and the plaintiff would have forfeited his rights, because he did not comply with the contract.

" It is a reasonable requirement of this policy. The company have the right to require parties, when they suffer loss, to make proofs of it, to make proper proofs, so that if there is any question about it they can investigate it while the facts and circumstances are fresh, before traces are obliterated, so that they can inspect the property, if there is any left.

·" Now, if the plaintiff did not furnish these proofs of loss within the thirty days, as is claimed by the defendant company, the plaintiff cannot recover. If he did furnish such proofs of loss, then, if you find the other facts, to which I shall call your attention, in his favor, he may recover.

" Something has been said as to the contents of this statement, which the plaintiff says he first sent to the company. [When a party suffers loss, and is required by his policy to

make out proofs of loss under such provisions as I have read
to you, while the contract itself may call for a sworn state-
ment, a detailed statement of all these different things, yet, if
the party makes out a statement to the best of his ability, so
that it can be gathered therefrom that a loss has been sustained
under his policy, and what that loss has been, what it is and
what the amount is, so that the company can have some defi-
nite information as to what the thing is, then, if the company
is not satisfied with it, they have a right to call for more spe-
cific proofs, a more specific statement. If they do not call for
it, the presumption is that they are satisfied with it, and waive
any further notice under their contract, but such a statement
must be sent, some proofs of loss must be made out under the
contract unless the company expressly waive it.] [8] Mere
silence upon the part of the company is not a waiver in the
absence of proofs of loss.

"Now, the defendant company further contend that the
plaintiff cannot recover, because he was not the sole owner of
this property. It is provided that this entire policy shall be
void if the interest of the insured be other than the uncondi-
tional and sole ownership, free from all liens whatever, or, if
the subject of the insurance be a building on ground not owned
by the insured in fee simple. The defendant company alleges
that while the plaintiff may have an interest in the land on
which this building stood, that he was not the sole owner of
it; that he was virtually a tenant in common with others, and,
therefore, he cannot recover. If that be the fact, if he was
not the sole owner of this property, was merely a tenant in
common of the land on which the building stood with others,
then he cannot recover, but if he was the sole owner of it, if
the property belonged to him, then, if he furnished proofs of
loss in time, he may recover.

"Upon the part of the defendant on this question of owner-
ship: Prima facie the policy itself, upon its face, implies that
the plaintiff owned the property. But the plaintiff himself
was put upon the stand for cross-examination by the defendant,
and in his examination, as I recollect his testimony, he testifies
that he had an interest in this property with his brothers, that
he was a tenant in common with them. His counsel allege
that he did not understand the proper meaning of this expres-

sion, and, when they found out what the facts were, they had to recall him for the purpose of explaining his testimony yesterday. So they put him on the stand to-day, and he alleges that there was a parol partition made of this land, that they derived it from their father. You have the testimony of the plaintiff himself, that he wrote to his brother John, and that John made arrangements with Stephen, and wrote back to him that they were well pleased with his proposed putting up a building, and that he might have the lot on which the building was, and that Stephen was satisfied with it. You have the testimony of John, corroborating him in that respect. [Upon the part of the defendant the question is, you see, gentlemen of the jury, if these three brothers owned this land together, they had a right to divide it up any way to suit themselves.] [9] If they divided it up by parol, and allotted or assigned this lot upon which this building was erected to the plaintiff, Daniel, they had a perfect right to do so, [and if they did do that, and in pursuance of that division or partition the plaintiff erected this dwelling-house upon this lot, then the property belonged to him; he took the title of all three, he took the title of the other two in addition to his own, and, therefore, was the sole owner of it.] [9]

"But, it is denied upon the part of the defendant, that he ever did this; they say that that is something made up since, an afterthought, and, upon the part of the defendant, you have the testimony of Stephen, one of these brothers, who denies ever having been a party to any such arrangement. Now, if Stephen was not a party to this arrangement, the plaintiff never acquired Stephen's title, no matter though John may have written that Stephen was satisfied, it was all right, that they were pleased that he was going to take this lot; if Stephen was not a party to this arrangement, John and Daniel could not get Stephen's title.

"In addition to the testimony of Stephen, you have the testimony of Mr. Lathrope. It is strongly corroborative of the testimony given to you by Stephen. You will remember that Mr. Lathrope testified, that after the fire he asked Daniel if he wanted the house rebuilt, and that Daniel said that he did not; that he had only an interest in the land, that it belonged to his father's estate, and that he could not do anything with

Stephen. Now, did he state the fact correctly then? This testimony, I say, is strongly corroborative of the testimony of Stephen, that there was never any partition. It is an admission, upon the part of the plaintiff, at a time when he was called upon to act, that he was not the sole owner of this property. Then you have also the testimony of the plaintiff, as given by him yesterday when upon the stand; of course, that is as it has been explained by him to-day. You have got to take the whole of his testimony together. It is for you to consider which you believe. In all these questions of disputed facts, where there is a conflict in the testimony, it is the duty of the jury to examine it closely, to sift it and scrutinize it, and find out which is true. You have seen the witnesses upon the stand; you have heard them testify; you heard what they testified to. Their credibility is for you. You must ascertain and determine whom you believe and what you believe, and from the evidence which you believe render your verdict.

" [If you find, gentlemen of the jury, that this partition was made by the three brothers, and that the plaintiff gave the company notice of the loss, as required by the policy—that is, furnished the proofs of loss within thirty days—then the plaintiff may recover.] [9] If he did not, or, if he was not the sole owner, as required by this policy, of this land, if the partition was never made, then he cannot recover.

" I am requested by counsel for the defendant to charge you upon a number of points : . . .

" 2. Although it is true, that if a letter be properly directed, stamped and posted, it may be prima facie evidence that the party to whom it was addressed received it, yet, when the party to whom it was addressed denies having received it, and proves that he did not receive it, the burden of proof is shifted and the prima facie proof is overcome, and it devolves on the party alleging the fact to prove that the party to whom the letter was addressed did receive it. Oral evidence cannot be given of any writing, the existence of which is disputed, which is material to the issue between the parties. And as there is no evidence in this case that the company received any communication from the plaintiff within thirty days after the fire, the plaintiff cannot recover, and the verdict must be for the defendant. *Answer :* I decline to affirm this proposition as it

is written, because it asks me to take the question from you. As I stated before, there is some evidence that this company received this alleged statement—the statement which the plaintiff alleges that he made. If you believe the plaintiff's testimony, if you believe that he made the statement and mailed it, properly stamped, that is some testimony; it is not conclusive that the company received it. Then, upon the part of the defendant, on that question, you have the testimony of Mr. Melchert and of Mr. Lathrope. You must determine from that evidence whether or not this company received that statement. First, you must determine whether or not the plaintiff ever made that statement; and second, you must determine whether or not the company ever received it. If the plaintiff never made it, why, it was never mailed; if it was never mailed, the company never received it; and if the company never received it—whether it was mailed or not—the plaintiff cannot recover. [1]

" 3. The policy by which this insurance was effected was issued by the defendant company in consideration of the stipulations named therein. The stipulations and conditions of the policy are as binding on the assured as upon the assurer. The stipulation, therefore, that the policy shall be void if the interest of the insured shall be other than unconditional and sole ownership, free from all liens, or if the subject of insurance shall be a building on ground not owned by the insured in fee simple, is binding upon the insured (and as it is admitted in this case that the plaintiff was a tenant of the real estate in common with his two brothers and sisters), he was not the entire, unconditional, and sole owner of the property, nor was he an owner in fee simple, and the verdict must be for the defendant. *Answer:* I decline to affirm that proposition. You see it has in the body of it the allegation that the plaintiff admits that he is a tenant in common of the real estate with his two brothers and sisters. As I endeavored to explain to you before, the plaintiff does not admit, while the effect of his testimony yesterday may have been to leave that impression, yet his contention now is, that he is not a tenant in common with his two brothers and sisters ; but his contention now is, that, having once been a tenant in common with his two brothers, they made a partition of this real estate, allotting to him this

piece of ground upon which his building stands; that is his contention now. Of course the defendant denies that, they say that is not so. [10]

" 4. If all the facts essential to create an estoppel are admitted or established beyond all controversy, there is no necessity for submitting the case to the jury, as it becomes the province of the court to declare the law applicable to such facts, and as it is admitted or established that the plaintiff did not have such title as required by the policy there is nothing in this case to submit to the jury. *Answer:* I decline to affirm that. [11]

" 5. Since the plaintiff was, at the time the insurance was effected, a joint tenant, or tenant in common with his two brothers and sister, he could not erect or place a building upon the common property without the consent of the rest, and then claim to hold such building in fee simple. There is no proof in this case that the plaintiff had any such consent to erect the building in question, therefore, the provision in the policy that if the subject of insurance be a building on ground not owned by the insured in fee simple, the policy shall be void, avoids the policy, and the verdict must be for the defendant. *Answer:* I decline to affirm that. [12]

" 6. It was the duty of the plaintiff, within thirty days after the loss, to render a statement to the defendant company, signed and sworn to by him, stating the knowledge of the insured as to the time and origin of the loss, the interest of the assured and of all others in the property, the cash value of each item thereof, and the amount of loss thereon, etc., and as there is no evidence in this case that this condition of the policy was complied with, the verdict must be for the defendant. *Answer:* I decline to affirm that proposition. In declining to affirm it, however, I will say, that under this policy, unless the company waived that requirement, the plaintiff was required within thirty days after the loss to render a statement to the defendant company, signed and sworn to by him, stating the knowledge of the insured, that is his own knowledge, as to the time and origin of the loss, the interest of the insured and of all others in the property, the cash value of each item thereof, and the amount of loss thereon, and if he did not furnish such statement, and the company did not waive the requirement, then the plaintiff cannot recover. [2]

" 7. No proof of loss, as required by the policy, having been furnished by the plaintiff to the defendant company, nothing was due and payable by the defendant company to the plaintiff at the time the suit was brought, because under the provision of this policy the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proofs of the loss required shall have been received by the company at its home office in Boston. The verdict, therefore, must be for the defendant. *Answer:* I decline to affirm that proposition. You see it asks me to say to you, that no proofs of loss were ever received; that is one of the facts you must ascertain, whether or not proofs were furnished in time. [3]

" 8. The plaintiff having alleged that he mailed a statement of his loss to the company within thirty days after the fire, it was incumbent upon him to show that what he sent to the company was at least substantially what the policy requires in order to make proofs of loss, namely, the interest of the insured and all others in the property, the cash value of each item thereof, and the amount of loss thereon, all incumbrances thereon, all other insurance, whether valid or not, covering any of said property, etc., and that the statement was sworn to by the assured. The plaintiff having failed to show that his alleged statement was of such a character as to constitute a sufficient and particular account of the loss, as required by the policy, therefore this did not constitute proofs of loss, and the verdict must be for the defendant. *Answer:* I decline to affirm that proposition, but I say to you again, as I said to you before in substance, that, if the plaintiff made out a statement of his loss, sufficient to give the company notice of his loss, the amount of it, setting forth substantially, even though not accurately, or in detail, all the requirements of the policy, and the company accepted that and required no further proofs, they may be held to have waived further proofs of loss, and, if they waived it, why, the statement would be sufficient, provided it was a substantial compliance, even though it lacked some of the details required by the policy. [4]

" 9. After the expiration of the thirty days within which the plaintiff should have furnished his proofs of loss, there must be shown an express agreement with the defendant company to file proofs to show waiver. Mere silence on the part

of the company is not enough to infer waiver. To constitute a waiver there must be shown some official act or declaration by the company during the thirty days, dispensing with it. Something from which the assured might reasonably infer that the underwriters did not mean to insist upon it. And no proofs of loss having been furnished in this case, and there being no evidence to show waiver of such proofs of loss, the plaintiff cannot recover, and the verdict must be for the defendant. *Answer:* I decline to affirm that proposition. I will say, however, that silence alone would not constitute a waiver upon the part of the company, unless they had received this statement. If they received such a statement, as I have mentioned already, and then they were silent, that may be construed into a waiver. But, if they never received any such statement at all, their mere silence, even though they knew of the loss, would not be a waiver. They were not bound to do anything until they had received the proofs of loss required by the contract, and until the plaintiff made some effort at least— some substantial effort—to give them proofs of that kind, they were not bound to act. But, if they did receive such a communication, they were bound either to send it back and require additional proofs, or they may be held to have waived further requirements. [5]

" 10. Under all the evidence produced in this case, the plaintiff is not entitled to recover, and the verdict must be for the defendant. *Answer:* I decline to affirm that proposition. [6]

" If you find in favor of the plaintiff, gentlemen of the jury, you will find in favor of the plaintiff for the value of the property destroyed, not exceeding the amount named in the policy, together with interest from sixty days after you find the proofs of loss were furnished, that is, if you find the proofs of loss were furnished. The interest must be calculated upon the amount you give the plaintiff, sixty days from the time the proofs of loss were furnished. Of course, if proofs of loss were not furnished, the verdict must be for the defendant. Or, if you find that this land was never divided between the three brothers, as claimed by the plaintiff, then your verdict must be for the defendant. If you find in favor of the defendant, then you will simply say that you find in favor of the defendant."

Verdict for plaintiff for $1,125 and judgment thereon. Defendant appealed.

*Errors assigned* were (1–6, 10–12) answers to defendant's points, quoting the points and the answers ; (7–9) the portions of the charge in brackets, quoting them ; (13–15) refusal of testimony offered by defendant.

*W. W. Watson* and *C. Stuart Patterson*, *W. S. Diehl* with them, for appellant.

*John F. Scragg* and *Everett Warren*, *Edward N. Willard* with them, for appellee.

OPINION BY MR. JUSTICE STERRETT, April 11, 1892:

There is no question as to the validity of the policy in suit, nor that the property insured was totally destroyed by fire on April 15, 1888, during the life of the policy. It was clearly shown, by undisputed evidence, that the value of the house and personal property destroyed considerably exceeded the amount for which they were respectively insured. The right of plaintiff to recover was resisted on two grounds :

1. That he failed to comply with the provision of the policy requiring him, within thirty days after the fire, to furnish the company with the statement of proof of loss therein specified.

2. That the house in question was " on ground not owned by the insured in fee-simple," and his interest therein was " other than unconditional and sole ownership."

Considerable testimony, bearing more or less directly on each of these propositions, was introduced and submitted to the jury, under instructions, which constitute the subjects of complaint in several of the specifications of error.

It was clearly shown that, within a day or two after the fire, notice of the total destruction of the house and contents was given to the company. Testimony on behalf of plaintiff tended to prove that, within ten days thereafter, he prepared an itemized statement of his loss, inclosed it in an envelope, properly stamped, and addressed to the " Dwelling House Insurance Company, Boston, Massachusetts," and placed it in the post office, at Carbondale, Pa.; that, before mailing the package, he showed it to the company's local agent at Carbondale, informed him that it was a statement of his loss, which he was about forwarding by mail to the company, etc., and, in reply to the inquiry whether that was right the agent assented. These matters were all testified to in detail by the plaintiff

himself, and he was corroborated therein by a disinterested witness.

The testimony also tended to prove that, after waiting, in vain, several weeks for a reply from the company, plaintiff caused to be prepared and mailed to its home address, as before, a second itemized statement of loss. Pursuant to notice to produce both statements, etc., at the trial, the company brought into court the last mentioned paper, and denied receiving the other. In connection with the evidence tending to prove the preparation and mailing of the first statement, plaintiff offered in evidence the second statement or proof of loss, but being objected to by the company, as incompetent and irrelevant, because not furnished within thirty days after the fire, it was, for that reason, excluded.

For the purpose of rebutting the inference that might be drawn from mailing the first statement within the thirty days, the company undertook to prove, by Mr. Melchert, one of its employees, that he had charge of its mail matter, and that the statement was never received by him.

The testimony of both parties relating to the mailing of the first statement, etc., was fairly submitted to the jury, and they must have found as a fact that it was properly deposited in the post office, as alleged by plaintiff, and duly received by the company. There appears to be no error in admitting the testimony bearing on that question, or in the instructions which accompanied its submission to the jury. It is well settled that the fact of depositing, in the post office, a properly addressed, prepaid letter, raises a natural presumption, founded in common experience, that it reached its destination by due course of mail. In other words, it is prima facie evidence that it was received by the person to whom it was addressed; but that prima facie proof may be rebutted by evidence showing that it was not received. The question is necessarily one of fact, solely for the determination of the jury, under all the evidence: Folsom v. Cook, 115 Pa. 549; Insurance Co. v. Tunkhannock Toy Co., 97 Id. 424; Huntley v. Whittier, 105 Mass. 391, and cases there cited; Briggs v. Hervey, 130 Mass. 188.

For the purpose of this case, therefore, it must now be accepted as true, that the first statement was received by the company within the required time.

It is, however, contended that the itemized statement in question was not shown to have been in accordance with the requirements of the policy, and hence it amounted to nothing, whether received or not. We cannot assent to that proposition. Assuming, as in view of the verdict we must, that the statement was duly received, the company could not in good faith treat it as a mere nullity. If it was found to be informal or defective, as proofs of loss, and the company was unwilling to accept it as such, it was its duty to return the paper, with specification of defects, so that plaintiff might have an opportunity of correcting them. When such statement of loss is furnished within the stipulated time, and there is nothing to show that it was not in good faith intended as a compliance with terms of policy, it is the duty of the underwriter, if it means to rely upon failure to comply, to give prompt notice of its objection, pointing out defects, etc. Such provisions in policies of insurance are intended for the information and protection of the underwriter, and cannot, with impunity, be used to ensnare the unwary and confiding. In such circumstances, the failure of the company to return statement of loss, or to notify the insured of defects therein, is some evidence for the jury of a waiver of strict compliance : Gould v. Dwelling House Ins. Co., 134 Pa. 570, and cases there cited. In that case, our brother MITCHELL, after reviewing the authorities, said : " The result of the decisions may therefore be formulated in the following rule : If the insured, in good faith and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy, good faith equally requires that the company shall promptly notify him of their objections, so as to give him an opportunity to obviate them ; and mere silence may so mislead him, to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel."

Every reputable and trustworthy insurance company recognizes the propriety of this rule, and acts upon it.

The evidence in this case indicates that, in doing what he did, the insured intended in good faith to comply with the requirements of his policy. Self-interest could not have prompted him to do anything else. The defendant company, on the other hand, was so identified with the case above cited as to be somewhat familiar with the rule therein stated.

The further objection that plaintiff was not the sole and unconditional owner of the land on which his house stood, etc., involved questions of fact, which were also determined in his favor.     There was some evidence tending to show that, by an amicable agreement with his coheirs, plaintiff became sole owner of that portion of the land on which he afterwards erected the house in question.   The testimony was conflicting, but we are not prepared to say that it was not proper for the consideration of the jury.   It was fairly submitted to them, and they must have found that there was a family arrangement or agreement whereby plaintiff became entitled in severalty to the land on which his house stood.

There appears to be nothing in either of the fifteen specifications of error that requires a reversal of the judgment.

Judgment affirmed.