### J. W. RINGROSE CO. v. W. & J. SLOANE.

(District Court, E. D. Pennsylvania. December 22, 1919.)

#### No. 5672.

1. EVIDENCE ⇐71—RECEIPT OF LETTER EVIDENCED BY MAILING.

  The mailing to a defendant of a properly addressed and stamped envelope containing a letter, and the production of the letter by defendant at the trial, are both evidence of its receipt.

2. EVIDENCE ⇐378(3)—LETTER OF CORPORATION ADMISSIBLE WITHOUT PROOF OF AUTHORITY OF SIGNER.

  In an action on a contract alleged to have been made by correspondence, a letter purporting to be signed by defendant corporation, and to accept the terms proposed in a letter received from plaintiff and in evidence, *held* admissible as prima facie that of defendant, without proof that the person signing it had authority to make the contract.

3. SALES ⇐94—CONTRACT REVOCABLE AT WILL DETERMINES RIGHTS PRIOR TO REVOCATION.

  A contract to buy or sell goods at a price, although revocable at will, determines the rights of the parties respecting the transactions executed thereunder before revocation.

4. PRINCIPAL AND AGENT ⇐41—INSTRUCTION SUBMITTING KIND OF CONTRACT MADE MISLEADING, WHERE JURY WAS GIVEN NO MEASURE OF DAMAGES THEREFOR.

  Where, in an action on a sales contract, court instructed that if jury found a commission contract damages would be a stated amount, and if they found a protection contract to simply find for defendant, it was misleading to submit the question whether contract was a reference contract —that is, to refer buyers to plaintiff—which would carry a different measure of damages.

At Law. Action by the J. W. Ringrose Company against W. & J. Sloane, a corporation. On motion by defendant for a new trial. Granted.

Paxton Deeter and Murdock Kendrick, both of Philadelphia, Pa., for plaintiff.

Selden Bacon, of New York City, and F. B. Bracken, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The findings of any tribunal in any cause are facilitated by the determination (1) of what the questions are upon which the decision of the cause turns, and (2) the proper answers to be made to these questions. This first step is always of importance, and usually is a long step toward the final conclusion reached. A third help is not to have these questions too numerous. The fable

---

⇐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the fagots does not apply to defenses in litigated cases. Many defenses, no matter how bundled, are often of less strength than one, and very many are sometimes weaker than none.

The real difference these parties have is over the arrangement made between them. The plaintiff asserts that it was a contract to pay him a 10 per cent. commission on all sales made of a certain fabric. The defendant asserts it was an agreement to sell to the plaintiff at a certain price, and not to sell to others at less than a 10 per cent. advance on this price. The former is known to this record as a commission contract; the latter, as a protection contract.

The real question involved is what was the contract; a subsidiary question of law is whether the contract is to be found by the jury from all the evidence, or found by the court to be embraced in the part of the evidence which is in writing and construed as a written contract.

A number of defenses were advanced by the defendant at the trial, and are now reurged in support of the present motion. In deference to the insistence and urgency of counsel, we will take up a number of them for consideration seriatim.

(1) No oral contract was made on behalf of the defendant by the salesman, Gardner, as averred by plaintiff.

(2) If such a contract was made, the salesman, Gardner, by whom it was made, had no authority to bind the defendant.

This defense, as the first, has no present value, for the reason that it depends upon what the contract was. If it was as asserted by the plaintiff, the trial judge ruled that it was unauthorized; if it was as asserted by the defendant, the jury was instructed that the contract had not been breached; and, further, the contract asserted was not a contract made by Gardner, but one suggested and outlined by him, and submitted to the defendant itself, who then made the contract, or, if the expression be preferred, ratified it.

(3) The defendant itself made no contract.

The real meaning of this is that there was no evidence from which a contract could be found, and will be so considered.

[1] (4) There was no evidence that defendant received the letter of March 13, 1918, setting forth the contract.

The mailing of a properly addressed and stamped envelope, containing the letter, is in itself evidence of its receipt by the defendant. Whitmore v. Ins. Co., 148 Pa. 405, 23 Atl. 1131, 33 Am. St. Rep. 838. The production of the letter by defendant at the trial on call is also evidence of its receipt.

[2] (5) There was no evidence that the reply letter of March 14, 1918, accepting the contract set forth in the letter of March 13, 1919, was the letter of defendant, or written by its authority.

For this proposition the case of Penna. Taximeter Co. v. Cressy, 191 Fed. 337, 112 C. C. A. 81, is cited. Under the broad facts of that case it might well be relied upon as ruling the instant case, because there was there, as here, a letter mailed to the defendant and answered. It is to be observed, however, that for some reason the cause of action there was not based, as it is here, upon the contract of the defendant appearing (inter alia) by letters to and from the defendant, but upon a

contract made by one George W. Close, by which the defendant was averred to be bound upon the double ground (1) that Close had been held out by the defendant to be its agent with authority to make the contract, and (2) the defendant by its "course of dealing subsequent to the date" of the contract by which it had accepted and acted upon it "had effectually ratified and affirmed" it.

The trial judge submitted these two questions to the jury, who found for plaintiff. The Court of Appeals (as was then the practice) entered judgment for defendant n. o. v., holding that there was no evidence of any "course of dealing" from which either precedent authority to make the contract or subsequent ratification of it could be found. Judge Gray was careful to point out that the ruling was made wholly upon the point of the absence of evidence of any "course of dealing," as it was an admitted fact in the case that there was no other basis of support for the judgment.

In the instant case, it is to be observed that the cause of action is not put upon the ground of precedent authority in Gardner to make the contract, or of ratification in any real sense by the defendant. On the contrary, the cause of action is based upon a contract made by the defendant itself. Gardner's connection with it was merely to fix its scope and terms. It was then submitted to the defendant, and became defendant's contract, because defendant made it such. It was a ratification of Gardner's act only in the sense that the defendant made a contract, the terms of which had been talked over and approved by Gardner before it was submitted to the defendant. It did not become a contract because Gardner had first made it, and the defendant had afterwards sanctioned it by accepting it and benefiting by it, but it became a contract, as has been said, wholly because defendant made it.' The question is not whether there was any evidence of the ratification of an unauthorized contract, but whether there was any evidence that the defendant had made the contract. There was no evidence to warrant the finding of a contract, unless the letters of March 13 and March 14, 1918, were properly admitted in evidence.

We have already ruled the letter of March 13th to be evidential. Is the letter of March 14th? The question is brought down to this: Plaintiff, having offered in evidence the letter of March 13th, follows it with the offer of the reply letter of March 14th, which purports to bear the signature of the defendant. No proof of signature was required, but the letter was objected to on the ground that the defendant, being a corporation, could sign a letter only by the hand of some natural person, and that the authority of the person who signed the letter to make a contract should be shown before the letter (although the letter of the defendant) could go in evidence.

The question presented will be determined upon the assumption that the only evidence upon the question of authority to receive and answer letters was that the organization of the defendant's office for business was by the appointment of a mail clerk, who received all letters and distributed them to different persons in the office to be answered, and that this letter had been referred to and answered by (as the letter itself showed) the same Mr. Gardner, with whom the plain-

tiff had conferred before the letters were written. We adhere to the view before expressed that the letters were properly admitted in evidence as prima facie letters received and answered by defendant. Roe v. Insurance Co., 149 Pa. 94, 23 Atl. 718, 34 Am. St. Rep. 595.

The question subsequently lost all trial value, for the reason that the defendant proved by the witness Gardner that the defendant made, in the usual course of its business, what he terms "protection contracts," and his authority to make contracts of this character, so that the real question became, not one of whether the defendant had made the contract, or of Gardner's authority, but what the contract, which was made, was.

(6) The contract, if made, was nudum pactum.

This is mere assertion. The consideration was that the plaintiff should create a market for the fabric and buy it of the defendant at a price.

(7) There was no mutuality of obligation.

This is the same point in another form.

. (8) The contract was so vague and indefinite in its terms as to be unenforceable.

This depends altogether upon what the contract was. The point has, however, a bearing which will be later discussed.

(9) The contract was void, because against public policy.

This point was so presented as to suggest danger that it would arouse only prejudice. The illegality of the contract turned wholly upon what it was. The point presented asked the trial judge to charge that it was illegal, because it was a conspiracy to raise the price of the fabric to the government. The contract expressly excluded transactions in which the government was concerned. The point in consequence had no application, because, if the government was concerned, there was no contract, and whether lawful or not was of no moment.

(10) There was no evidence to establish the contract set up.

This is involved in the points already discussed.

[3] (11) The contract was revocable at will, and because of this no contract at all.

So far as this point is not involved in that of indefiniteness, it depends upon whether the contract is executory or executed. So far as executory by its very terms neither party could be compelled to continue it. An agreement to buy or sell at a price, however, although revocable at will, will determine the rights of the parties respecting any transaction within the contract which the parties have had before revocation.

(12) The letter of May 4, 1918, was a revocation of the contract.

No point was made of this at the trial, and it does not support a motion for a new trial. It remains in the case for whatever it may be worth.

(13) No breach of contract was shown.

This, also, depends altogether upon what the contract was. If the contract was as construed by defendant, the jury was instructed there was no breach, and directed to find for defendant. If the contract was as construed by plaintiff, the breach was manifest.

[4] (14) The numerous complaints of error in the exclusion or admission of evidence need not now be considered, nor the question of whether the contract was for the court or the jury to find and construe. All these questions remain in the case.

There was in the case and defense but one question, which, if there was any jury question, it was worth while to submit to the jury, and that was the question of what the contract was—whether it was a contract to refer all purchasers to plaintiff, so that it might make the sales, otherwise to allow plaintiff 5¼ cents per yard on sales made by defendant, or whether it was a contract not to sell at less than a 5¼-cent advance on the price to plaintiff. If the contract was the first, the measure of damage was the 5¼ cents. If the contract was the second, there was no breach. The charge so left the cause with the jury. At the close of the charge the trial judge was asked to submit to the jury to find whether the contract was one to simply refer purchasers to the plaintiff. This was done, but for the moment the effect of this instruction was overlooked. The effect was this: The jury had been charged in effect that, if they found for the plaintiff, the damages should be assessed at 5¼ cents per yard; if they found a protection contract, the verdict should be simply for the defendant. They were not instructed upon the measure of damages, because there was no need of a measure. When, however, they were charged they might find a reference contract, the natural inference was that the measure of damages was still 5¼ cents per yard. This inference was an error, and, although the error in the charge was an inadvertence, it was none the less error. If the jury found a commission contract, the measure of damages given them was correct. If they found a reference contract, that measure was clearly wrong. The present difficulty is that we do not know which contract they found. The attention of counsel was called to this, and the suggestion made that the jury be reinstructed; but counsel for plaintiff thought the instruction was sufficiently clear.

We have examined the charge, and do not find it so. For this reason, the case must be retried. This is to be regretted, because it is a distasteful duty to interfere with a verdict fairly won.

The same thing must be said as to the answer to the plaintiff's fifth point. This point was misread. It was read at the time as referring to the distinction between a contract made by an agent without authority, and the same contract subsequently submitted to and made by the principal. A re-reading, however, discloses the point to be broader, or at least different from this. It means that if, after an unauthorized contract is made, the parties subsequently accept it by acting upon it, this ratifies and confirms it. The proposition is true enough, but it was error to submit it to the jury, because there was no evidence in the case of such ratification.

The case of the plaintiff, if it has any, as presented, rests upon the proposition that a contract negotiated by the agent was submitted to and accepted by the defendant itself. If the evidence of a contract is wholly in writing, so that a contract may be found from the writings alone, it is to be construed and its meaning found by the court; if facts are to be found before the contract can be known, it necessarily

must go to the jury. This question is still in the case, but there was no evidence upon which defendant's point 5 could be based. The point, and unfortunately the answer, also, ignores the distinction between a contract negotiated by an unauthorized person and submitted to and made by the principal, who thus makes it his contract, and an agreement made with the same unauthorized person, which the principal afterwards, by his course of dealing and acts, is held to have adopted as his own, and thereby ratified it through having accepted the benefits of it. Each proposition is sound, but the respective principles upon which each is based are wholly different, and the evidence supporting each is likewise different.

The letters of March 13th and 14th, having been admitted as the letters of defendant, were evidence that the defendant made the contract; there was no evidence that the defendant, with knowledge that Gardner had assumed authority to make the contract, had acted upon it by performance or accepting performance, so as to be estopped from denying it.

The rule for a new trial is made absolute.