## Whited v. The Freystown Mutual Fire Insurance Company

*Keith & Bigham*, and *E. V. Bulleit*, for plaintiff.

*John E. Brenneman, Spencer D. Wareheim* and *John P. Butt*, for defendant.

SHEELY, P. J., February 13, 1939.—Plaintiff, a judgment creditor of S. P. Jacques, brought this action of assumpsit against defendant company upon a policy of insurance covering a property owned by Jacques, claiming for the total destruction by fire of the property in-

sured. To the policy was attached a standard mortgagee clause making the loss payable to plaintiff as "mortgagee".

At the trial defendant admitted, either specifically or by failure to deny, most of the allegations contained in plaintiff's statement of claim. It was then agreed by counsel that the disputed questions of fact should be submitted to the jury, and the jury's answers thereto, together with the admitted facts, should be submitted to the court as on a case stated, and that the court should enter such judgment as would be warranted by the facts.

The facts thus determined are that sometime prior to September 1, 1936, plaintiff informed T. E. Warner, an agent of defendant company for the solicitation of insurance, that S. P. Jacques had purchased the premises in question, and that plaintiff had $2,000 in the premises, and requested Warner to protect his investment by fire insurance. Warner replied that such protection could be afforded by attaching a loss-payable clause to the policy of defendant and promised to secure such policy. Thereafter defendant executed its policy insuring the premises of Jacques and attached thereto a mortgagee clause making the loss payable to plaintiff as mortgagee. The policy so prepared was delivered by the company to Warner and by Warner to plaintiff.

On January 4, 1937, defendant company laid an assessment upon all policies and mailed notices to policyholders requiring payment of such assessments on or before March 1, 1937, upon penalty of the policy's becoming void until the assessment was paid. A copy of the notice of assessment and a demand for the payment thereof was received by Jacques, but no notice was received by plaintiff. Neither Jacques nor plaintiff paid the assessment prior to March 23, 1937, when the property was totally destroyed by fire. The jury also found that either Whited or Jacques had represented to the insurance company or to its agent that plaintiff held a mortgage on the Jacques property.

Plaintiff contends that under these facts he is entitled to judgment against defendant whether or not Jacques received notice of the assessment on the theory that under the mortgagee clause plaintiff had a separate contract of insurance which would not be affected by any act or omission of the insured, and that since plaintiff had received no notice of the assessment the policy was in force as to him. Defendant contends that failure of Jacques to pay the assessment rendered the policy void for all purposes, and that plaintiff cannot recover in any event for the reason that a judgment creditor cannot maintain an action under a mortgagee clause.

The holder of a lien against real property can protect his interest in such property by insurance in one of three ways. Having an insurable interest in the premises he could take out a policy in his own name insuring that interest. Or, a policy insuring the property of his debtor may be assigned to him, with the consent of the company, so that the loss to the property by fire may be paid to him to the extent of his interest in the property. Or, if his lien is a mortgage, a standard mortgagee clause may be attached to a policy issued to his debtor, under which the loss to the property would be payable to him to the extent of his interest therein. If the simple assignment or loss-payable clause is used, he accepts the policy subject to any defense which the company might have against the owner of the property, but if he is a mortgagee, and the standard mortgagee clause is used, he has, in addition to the assignment of the policy, a separate contract with the insurance company which makes the company liable to him for loss to the property regardless of any defense which the company might have against the owner of the property: Knights of Joseph B. & L. Assn. v. Mechanics' Fire Ins. Co. of Phila., 66 Pa. Superior Ct. 90.

In Clarke & Cohen v. Real, to use, 105 Pa. Superior Ct. 102 (1932), First National Bank of Charleroi v. Newark Fire Ins. Co., 118 Pa. Superior Ct. 582 (1935),

and Dalesandro et al. v. New York Underwriters Ins. Co., 121 Pa. Superior Ct. 175 (1936), the Superior Court held that the standard mortgagee clause is not applicable to judgment or lien creditors, other than mortgagees, and that this is apparent from the language of the clause and from the provisions of The Insurance Company Law of May 17, 1921, P. L. 682, 737, 40 PS §658. It was held that the insurance company no more estops itself by attaching such a clause in favor of an alleged mortgagee than it does by issuing a policy in the name of an alleged owner. In other words, the insurance company attaching such a clause in favor of a judgment creditor may, nevertheless, show that he was not a mortgagee and, therefore, not entitled to the additional contract of insurance between himself and the insurance company in addition to the contract between the insurance company and the owner of the property.

Plaintiff in this case draws a distinction between the three cases above cited and the present case on the theory that the companies involved in those cases were stock insurance companies whereas the company in the present case is a mutual company, and that The Insurance Company Law of 1921, supra, by its terms applies only to stock fire insurance companies. Under this theory a mutual company could attach to its policy a mortgagee clause which would be applicable to a judgment creditor. However, this theory fails to take into consideration the language of the mortgagee clause and the provisions of section 804 of The Insurance Company Law of 1921, which provide that mutual insurance companies may insert in any form of policy prescribed by the law of this Commonwealth any provisions required by its plan of insurance which are not inconsistent or in conflict with any law of this Commonwealth. Under this provision we believe it to be the legislative intent that the form of policy should be uniform insofar as possible, and that the form prescribed by the law of this Commonwealth for insurance policies must be adopted by

mutual companies except insofar as their own plan of insurance requires otherwise.

As hereinbefore indicated, a mortgagee clause has two features. It is an assignment of the interest of the insured to his creditor to the extent of the creditor's interest in the property, and it is also a separate contract of insurance between the company and the creditor. The question then arises as to the effect of the loss-payable feature of a mortgagee clause where it develops that the party to whom the loss is payable is not mortgagee, but a judgment creditor. Under the cases above cited, the separate contract of insurance or the additional rights accorded the mortgagee are not in force under these circumstances unless, as indicated in the Charleroi and in the Dalesandro cases, there was evidence which would warrant a finding that plaintiffs had contemplated obtaining a separate policy insuring their own special interest as judgment creditors, or changing their security from a judgment to a mortgage and were dissuaded from taking either of these steps by the acts or representations of the defendant or its agent. In such case, the act of defendant company in dissuading plaintiff from otherwise protecting himself might raise an estoppel which would prevent defendant from contending that the separate contract of insurance contained in the mortgagee clause was not in effect. The evidence in this case, however, does not raise that question.

There is nothing in any of the cases above cited which holds that the loss-payable feature of the mortgagee clause would not be in effect as respects the judgment creditor just as though the policy had been simply assigned to him with the consent of the company. By eliminating the separate-contract feature, the judgment creditor would take the policy subject to any defense which the company might have against the owner of the property. The company would not be deprived of any benefit or any defense thereby, and its liability under the policy, or its risk of loss, would not be increased in

any way. The company has consented to make the loss payable to the creditor as mortgagee, and there is no reason why such clause should not be construed as a consent to making the loss payable to the creditor as a judgment creditor. The action then should be upon the original policy, but this is subject to amendment; Dalesandro et al. v. New York Underwriters Ins. Co., supra, and cases therein cited.

The question of the liability of the company to a judgment creditor under these circumstances was raised in the Charleroi case, and, at page 586, Judge Brownson held that the defense could not be raised in that case because under the undisputed evidence it was shown that defendant company knew that the lien held by the creditor was a judgment and not a mortgage, and he applied the rule of estoppel. He did not hold, however, that plaintiff would not be entitled to recover as an assignee of the policy even though the company might not have known the nature of its lien.

We conclude that the limitation upon the use of a mortgagee clause applies as well to a mutual insurance company as to a stock insurance company, and that plaintiff in this case, being a judgment creditor, cannot claim the benefit of the separate contract of insurance with the insurance company. Plaintiff can, however, claim the benefit of the loss-payable feature of the mortgagee clause and would be entitled to recover on the policy as the assignee of Jacques subject to any defense which the company might have against Jacques.

The important question in this case, therefore, is whether Jacques received notice of the assessment prior to March 25, 1937. If he did, and failed to pay the assessment, the policy of insurance was suspended and void at the time of the fire, and neither he nor his judgment creditor would be entitled to recover thereon. The jury found that Jacques had received notice of the assessment, and we must now consider whether there was sufficient evidence on which to base this finding.

Under the testimony of the stenographer employed by defendant company, notices of the assessment due were prepared by her for all policyholders and lien creditors. After the notices were prepared, they were folded so that the name and address would show through the "window" envelope; the envelopes were stamped and mailed either by her or by the secretary of the company. She was assisted in the folding and stamping of the envelopes by the secretary of the company. She testified that notices were prepared to Jacques and plaintiff, although she had no specific recollection of folding, stamping, or mailing the notices to them. In all, there were about three thousand notices sent out to policyholders and lien creditors.

If the jury found as a fact that such notices were prepared, addressed, stamped, and mailed, there would be a presumption of fact that such notices had been received by the addressees: Whitmore v. Dwelling House Ins. Co., 148 Pa. 405, 417; Beeman v. Supreme Lodge, etc., 215 Pa. 627, 629. The mailing of the letter is only prima facie evidence of its receipt by the addressee, and the question is one of fact for the jury under all the evidence: Francis v. Prudential Ins. Co., 243 Pa. 380, 391. Both plaintiff and Jacques testified that they had received no such notice and knew nothing of the assessment until after the fire. The jury found, in answer to the questions submitted, that Jacques had received the notice but that Whited had not.

In view of the inability of the stenographer for defendant to testify specifically to the addressing, stamping, and mailing of the notices to Jacques and plaintiff, and in view of the method by which the case was submitted to the jury, we are not satisfied that the jury fully understood the nature of this question. This view is supported by the finding that one party received the notice and that the other party did not. Unless the jury found that the notices were prepared, properly addressed, stamped, and mailed, the presumption of receipt would

not arise, and if the presumption would arise it would arise equally as to both Jacques and Whited. Under these circumstances, we feel that a new trial should be granted and the case submitted to the jury for a verdict in the light of the views expressed in this opinion.

And now, February 13, 1939, it is ordered and decreed that a new trial be granted in the above-entitled case.