# Briggs, Appellant, v. Morris.

*Contracts—Indefiniteness as to terms—Unenforceable contracts—Payments on account of an indefinite contract.*

In an action of assumpsit to recover upon a verbal contract, it appeared that in 1908 plaintiff entered the employ of the defendants as a bond salesman and under the terms of his employment was to receive a salary of $250.00 a month and all of his expenses and a commission of 2½ per cent. on all bonds sold. The enterprise then being promoted by the defendants was a railway and navigation company which did not prove attractive to investors and no bonds were sold. Defendants undertook to float another enterprise, containing some of the public utilities included in the first one and negotiations were commenced with a construction corporation in the summer of 1910 which ended in a contract for the construction of the road in April, 1911. Preliminary to a definite arrangement with the construction corporation, the corporation sent an engineer to examine the property for the purpose of estimating the cost of the construction and plaintiff, representing the defendants, accompanied him. The engineer estimated that it would cost $1,726,000 to construct the road as then projected. During the period of time from the original employment of the plaintiff down to January, 1911, plaintiff received his compensation of $250.00 a month and his expenses. Plaintiff contended that in January, 1911, he had a conversation with the defendant in which plaintiff proposed that instead of attempting to sell bonds himself as he had done before he should undertake the instruction of salesmen and the help of them when help was necessary, that he was to deal with the clients of the salesmen when the salesmen were unable to deal with them; that he was to take people to the situs of the construction and investigate the road as an investment; that he was to attend to matters that came up between the defendant and the construction corporation and that he was to take all those things in his hands and "do the entire work" for which he was to receive 2½ per cent. on $1,726,-000. *Held,* (1) that there being nothing in the contract to indicate how long the services were to last or what amount of service was to be rendered, the contract was unenforceable; (2) that if as alleged by plaintiff he had received $17,000 in bonds and cash on account of his commission this would not give life to the contract since payments on account of a void contract cannot give it form or make precise and definite that which lacks those qualities.

Argued January 14, 1914. Appeal, No. 199, Jan. T., 1913, by plaintiff, from judgment of C. P. No. 3, Philadelphia Co., March T., 1912, No. 355, for defendants non obstante veredicto in case of Philip S. Briggs v. James H. Morris and Fred S. Morris. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover commissions.

Verdict for plaintiff for $28,215.14. Upon a motion for judgment non obstante veredicto, FERGUSON, J., filed the following opinion:

In the latter part of the year 1908 the plaintiff Briggs entered the employ of the defendants as a bond salesman. Under the terms of his employment he was to receive a salary of $250 a month and all of his expenses, and a commission of two and a half per cent. on all bonds sold. The enterprise then being promoted by the defendants was a corporation known as the Birmingham & Gulf Railway and Navigation Company. It did not prove attractive to investors, and no bonds were sold by the plaintiff, although he made efforts to bring about sales. The defendants undertook to float another enterprise, containing some, but not all, of the public utilities included in the first one, and plans were made to obtain a franchise for the construction of the road and to induce a contracting firm to undertake that construction. Negotiations were commenced with a corporation which engaged in that line of work, by the name of MacArthur Brothers, with offices in New York City. These negotiations began in the summer of the year 1910, and ended in a contract in the month of April, 1911.

Preliminary to a definite arrangement with MacArthur Brothers, that firm sent an engineer to Birmingham to examine the property, for the purpose of estimating the cost of construction, and the plaintiff, representing the defendants, accompanied him. This engineer estimated that it would cost $1,726,000 to construct the road as then projected.

During the period of time from the original employment of the plaintiff down to the month of January, 1911, he received his compensation of $250 a month and his expenses. The present suit is to recover compensation which was agreed upon, as contended by the plaintiff, in the month of January, 1911. It is contended by the plaintiff that in that month a change was made in the relations between himself and his employers so far as relates to his commission. The testimony of the plaintiff is to the effect that in the early part of the month of January, the exact date being uncertain, he had a conversation with one of his employers, in which the plaintiff made a proposition touching the contract between them; that no reply was given to the proposition at that time, and that subsequently, a few days later, on a train between Philadelphia and New York, a second conversation was had, in which the proposition of the plaintiff was accepted. The testimony of the plaintiff on the subject is as follows:

As to the first interview the plaintiff says: "I told Mr. Morris that if we would put these men (several salesmen) on, that I would instruct them and give them all the help they needed, and if they could not close with any of their prospective clients, that I would go to see them for them, which I did, and that all the work, such as taking parties of people down to Birmingham to investigate the road and letting them see it before they invested I would have to do, and I would also have to instruct their New York office, the salesmen from their New York office, and if anything came up between MacArthur Brothers and Morris Brothers, that I would have to give it my attention, or if anything came up between them and the International Bond and Share Company;......and that I would have to take all those things in my hands and do the entire work, and therefore that I wanted to receive my commission of two and a half per cent. upon the $1,726,000 instead of upon the bonds authorized."

And as to the second interview the plaintiff says: "I asked Mr. James H. Morris whether or not he had given the matter any thought as to the proposition that I made, and Mr. Morris said yes, that he had. I then said, 'Do I understand that I am to receive two and a half per cent. commission on $1,726,000?' Mr. Morris said, 'That was our agreement,' and that was the way we left it."

It will be observed that this change made no reference to the monthly salary of $250. Nothing was said as to whether that salary was to continue or not, and during the year 1911 the salary and expenses were paid to the plaintiff as they had been before the alleged contract was made.

We have before us a motion for judgment non obstante veredicto based upon the contention that the contract is incomplete, and that from its terms it could never be determined as a matter of fact when the services were ended and the plaintiff entitled to the commission which he claims.

There were no witnesses to the contract and the only persons present were the two parties to it. The defendant denies that any such conversations ever were had between him and the plaintiff, but upon the motion which we have before us, we cannot consider the evidence of the defendant upon that point, neither is it profitable to discuss the improbability of such a contract between rational men. These questions were for the jury. The question we are to determine is whether or not the contract is one which can be enforced.

It is the contention of the plaintiff that the contract was a promise by the defendant to pay two and a half per cent. commission on $1,726,000, or $43,150, in consideration of services to be rendered by the plaintiff. The plaintiff proposed that instead of attempting to sell bonds himself, as he had done before, that he should undertake the instruction of salesmen and the helping of them when help was necessary; that he was to deal

with the clients of salesmen when the salesmen were unable to deal with them; that he was to take people to Birmingham to investigate the road as an investment; that he was to instruct New York salesmen; and attend to matters that came up between Morris Brothers and MacArthur Brothers and the International Bond and Share Company (a financial concern operating with MacArthur Brothers); and that he was to take all those things in his hands and "do the entire work." There is nothing in the alleged agreement that indicates how long the services were to last, or what amount of service was to be rendered. Certain questions naturally arise. Was the plaintiff to instruct salesmen until all the bonds were sold? Were the services of adjusting difficulties with MacArthur Brothers to continue as long as the last named firm was engaged in construction work? Were the services of "doing the entire work" to continue until the road was built or entirely financed? If the contract contained provisions of the sort suggested by these inquiries, it would be a simple matter if there was evidence upon these points to determine whether or not the services of the plaintiff had been performed. It appears, however, there is nothing in the contract which places any limit upon the services to be rendered, nor is there anything in the evidence from which an inference as to a limit can be drawn. There is nothing to show that the bonds had all been sold or that the road was completed or that the enterprise was completely financed. It is true the plaintiff, in his evidence, gave his views as to when his contract was completely performed, because he testified, "I figure that the minute that work was started down there that my contract was completed and I was entitled to my money." This refers to the start of construction work by MacArthur Brothers in April, 1911, three months after the contract was alleged to have been made. This view of the plaintiff, however, is merely an arbitrary determination upon his part that his services were com-

pletely performed when MacArthur Brothers began the work. It is merely his interpretation of the agreement and quite inconsistent with another phase of his evidence, which is to the effect that he continued to perform the services for the remainder of the year 1911.

There is a great mass of testimony in the case, most of which has no bearing whatever on the contract. The only part of the evidence which states the contract is quoted above. One is led to believe that the details of the promotion of the two railroad enterprises were brought out at great length for the purpose of leading the jury to believe that in some mysterious way the success of the venture depended upon the plaintiff, and that, irrespective of a contract, a large compensation was due to him. That the enterprise was a success is not clear, and it must be conceded that the mere possibility of large profits to the defendants, which were not established by any means as a matter of proof, was no justification for paying a large commission to the plaintiff without a contract.

No contract can be enforced unless both its subject matter and consideration are clearly defined. If there is uncertainty in either respect, there can never be a decision as to whether or not the contract has been performed: Soles v. Hickman, 20 Pa. 180; Butler v. Kemmerer, 218 Pa. 242; Walls' Appeal, 111 Pa. 460; Hare on Contracts (1887 Edition), Chapter 10, pages 205, 211, 212 and 213. The contract in this case is so indefinite that it is impossible to tell precisely what service the plaintiff was to render, and when payment of his compensation was due. As the contract was silent on those necessary features, it was an agreement as to which either party was at liberty to place his own construction, and in such case their minds never met. The rule of law upon this point was stated by Mr. Justice POTTER in Butler v. Kemmerer, 218 Pa. 242, thus: "To form the basis of a legal obligation an offer must be so complete that upon acceptance an agreement is formed

which contains all the terms necessary to determine whether the contract has been performed or not."

In Walls' Appeal, 111 Pa. 460, a parole promise was made by an uncle to the mother of his niece, that if the mother would let the niece stay with him and his wife, she, the niece, should have a good home as long as he lived, and at his death he would provide for her, and that she would never want as long as she lived. It was held that if this was a contract, it was not capable of being enforced, because its terms were hopelessly indefinite and uncertain as to length and amount of service, as well as to the compensation to be given. In the course of the opinion in that case the Supreme Court said: "The literal meaning of these words leaves the contract upon which the claim is founded in a state of entire uncertainty in its most material part, and that is as to the length or continuance of the service which the appellant was to render. How long was she to stay? Was it one month, one year, until her marriage, or during the life of the uncle? It is simply impossible to answer this question. A species of compensation is alleged to have been fixed, to wit, a good home as long as he lived, and a provision for her at his death, so that she should never want as long as she lived. Supposing this rather indefinite compensation to be sufficiently certain to abide the test of the decisions, what was to be done by the appellant in order to entitle her to it? Admittedly, she was to render service, but how much service? Just here is the difficulty. The contract itself ought either to specify the amount of service to be rendered, or at least ought to afford the means of ascertaining or defining with some sort of precision the consideration which was to be given for the compensation claimed. If this is not done the law has no standard by which to measure the performance by the claimant of her part of the contract. Where such is the case the alleged contract is hopelessly uncertain and cannot be enforced."

We deem it unnecessary to discuss the various fea-

tures of the statement of claim and the evidence which would seem to indicate that the suit was one to recover for supposed services in bringing about an introduction of defendants to MacArthur Brothers. If we, at this time, were dealing with the motion for new trial we would be obliged to seriously consider if the trial judge had not fallen into error in submitting to the jury the question for their determination. Portions of the charge appear to touch upon that part of the evidence as if the action was for services in connection with the introduction of parties. Plaintiff would seem to be under the impression that his services began during the summer previous to January, 1911. During the intervening time, however, he continued to receive his salary of $250 a month and expenses. The contract, however, does not refer to any services in the past. If it did, it would doubtless be nudum pactum. It refers to services to be performed in the future. It places the promise of the defendants squarely upon an offer of services vague and general in terms and without limitation of time or the amount of services to be performed. The contract is so vague, uncertain and indefinite that it must be held to be unenforceable.

The fact that the plaintiff had received $17,000 in bonds and in cash, which he alleged to be on account of his commission, was submitted to the jury as a matter which might be considered as evidence of the contract. It is true the defendants contended that these payments were loans, but assuming the truth of plaintiff's evidence, as we must in a motion for judgment, it must be held that payments on account of a void contract cannot give it form, nor make precise and definite that which lacks those qualities. If the payments were made without consideration, they were voluntary payments. At the trial the defendants asked for a certificate. Upon the argument of this rule the defendants expressly waived their claim to the certificate as they must needs waive it in asking for judgment.

The motion for judgment non obstante veredicto is granted.

Plaintiff appealed.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*George Quintard Horwitz,* with him *Frank Smith,* for appellant.

*R. Stuart Smith,* with him *Charles E. Morgan,* for appellee.

PER CURIAM, February 9, 1914:

The judgment is affirmed on the opinion of the court below entering judgment for the defendants non obstante veredicto.