### J. W. RINGROSE CO. v. W. & J. SLOANE.

(District Court, E. D. Pennsylvania. July 2, 1920.)

No. 5672.

1. **Evidence ☞71—Mailed letter presumed to have been received.**

   A letter duly mailed is presumed to have been received.

2. **Evidence ☞54—Presumption cannot be based on presumption.**

   While it will be presumed that a letter duly mailed was received, yet, where such letter was relied on as giving notice of an agent's act, the further presumption of ratification by failure to disaffirm within a reasonable time cannot be indulged in, for that would result in a presumption on a presumption.

3. **Evidence ☞397(2)—Parol evidence is inadmissible to vary written contract.**

   Where a contract is reduced to writing, it will be presumed to contain the terms agreed upon, except in cases of fraud, accident, or mistake; and where a contract as to compensation of a sales agent after telephone communication was reduced to writing, the writing will be presumed to contain all of the terms.

4. **Contracts ☞9(1)—Agreement to "afford protection" to sales agent held too indefinite for enforcement.**

   Where plaintiff, which had acted as agent for the sale of a fabric used for lining of horse blankets, and had induced the government to accept the same, after negotiations received from defendant an agreement to afford protection of 10 per cent. of the cost to plaintiff, such agreement, which did not show whether the 10 per cent. was as a profit on sales or as a commission or compensation, was too indefinite for enforcement; the relation of the parties not clearly appearing.

At Law. Action by the J. W. Ringrose Company against W. & J. Sloane. On motion to take off nonsuit. Motion denied.

See, also, 262 Fed. 545.

Murdoch Kendrick, Paxson Deeter, and John C. Bell, Jr., all of Philadelphia, Pa., for plaintiff.

F. B. Bracken, of Philadelphia, Pa., and Seldon Bacon, of New York City, for defendant.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMPSON, District Judge. The plaintiff claims upon an alleged contract with the defendant, under which the plaintiff was to have the exclusive sale or agency for 36" MS fabric to be used for linings for horse blankets, and if the defendant quoted any outside parties on the fabric, it would afford the plaintiff a protection of 10 per cent. to its cost to the plaintiff as a profit, and if any outside parties requested quotations, the defendant was to refer them to the plaintiff. If the terms of the contract are found in the letters offered in evidence by the plaintiff, with the parol testimony, the above are the material terms on which the plaintiff relies.

The plaintiff, through its treasurer and general manager, Mr. Lyman, offered evidence of a conversation between the witness and Mr. Gardner, as salesman of the defendant corporation, over the telephone, to the effect that Mr. Lyman had told Mr. Gardner:

"Inasmuch as we had to put in a great amount of missionary work in originating this lining and promoting the sale of it to the government and the contractors, we should put something in writing to substantiate our verbal or oral agreement to the effect that we were to have the exclusive sale or agency of this lining, and they were to refer all inquiries to us, and in the event of their being asked to quote any one directly, and doing business with them directly, that they were to add a protection profit of 10 per cent., to be paid to us as our commission or compensation for our work in the matter.

"By Mr. Kendrick: Q. Was anything else said at that time? A. He said that that was perfectly agreeable to him, and to write him a letter in sum and substance, which he would acknowledge.

"Q. Did you write a letter the next day? A. I did; yes, sir. I wrote a letter that day.

"Q. That day? A. Yes; right after our telephone conversation; yes, sir."

The plaintiff relies for proof that the letters of March 13, 14, and 15, 1918, in connection with the telephone conversation between Mr. Lyman and Mr. Gardner, constitute a contract between the plaintiff and defendant upon the following contentions:

[1] That the letter of March 13th was mailed, addressed to the defendant at New York City; that the letter in question, having been regularly deposited in the mails, addressed to the defendant, is presumed to have been received by it (Whitmore v. Insurance Co., 148 Pa. 405, 23 Atl. 1131, 33 Am. St. Rep. 838); that the letter of March 14th to the plaintiff, with the defendant's name, "W. & J. Sloane," in typewriting at the foot, and signed "W. D. Gardner," together with the fact that the defendant never disaffirmed the authority of Mr. Gardner to make the agreement, constituted a confirmation and ratification of the alleged contract made by him, and the defendant, having notice through the letter of June 13th of the telephone conversation between Mr. Lyman and Mr. Gardner, is bound by that conversation to explain the meaning of the alleged ambiguity of the contract as shown by the letters.

[2] The plaintiff relies upon the rule laid down by Justice Miller in Indianapolis Rolling Mill v. St. Louis, 120 U. S. 256, on page 259, 7 Sup. Ct. 542, 544 (30 L. Ed. 639), where he said:

"The rule of law upon the subject of the disaffirmance or ratification of the acts of an agent required that if they had the right to disaffirm it they should do it promptly, and if after a reasonable time they did not so disaffirm it a ratification would be presumed."

The ratification of the unauthorized acts of an agent arises upon a presumption from a course of conduct based upon notice of what the agent has done. It should be borne in mind that there is nothing in the evidence to show directly authority in Gardner to make any such contract; he being merely a salesman of the defendant. The plaintiff must therefore rely first upon the presumption, afforded by the mailing of the letter, that the defendant had notice of the contents of the letter, and under that presumption of notice that it had notice of Gardner's answer. Notice to the defendant is therefore the essential fact upon which the plaintiff must rely for the second presumption that, because it did not disaffirm Gardner's action, it ratified it. We have therefore a presumption of ratification depending, not upon a fact, that is, direct proof of knowledge by the defendant of Gardner's acts, but depending upon the presumption that they had such knowledge.

In the case of Manning v. Insurance Co., 100 U. S. 693, at page 698 (25 L. Ed. 761), Justice Stronge said:

"The only presumptions of fact which the law recognizes are immediate inferences from facts proved. Remarking upon this subject in United States v. Ross, 92 U. S. 281, 284, we said: 'Whenever circumstantial evidence is relied upon to prove a fact the circumstances must be proved, and not themselves be presumed.' Referring to the rule laid down in Starkie on Evidence, page 80, we added: 'It is upon this principle that courts are daily called upon to exclude evidence as too remote for the consideration of the jury. The law requires an open and visible connection between the principal or evidentiary facts and the deductions from them, and does not permit a decision to be made on remote inferences. Best on Evid. 95. A presumption which a jury may make is not a circumstance in proof, and it is not, therefore, a legitimate foundation for a presumption. There is no open and visible connection between the fact out of which the first presumption arises and the fact sought to be established by the dependent presumption. Douglass v. Mitchell, 35 Pa. St. 440.'"

Applying these principles to the evidence in the present case, it is apparent that the plaintiff failed in its proof of the alleged contract in two particulars: (1) It failed to prove the authority of Gardner to bind the defendant; and (2) it failed to prove ratification of his acts through notice to the defendant and its failure to disaffirm.

[3, 4] Moreover, upon the face of the alleged written contract, it must, in my opinion, be construed, as construed at the trial, if it is binding at all, as a promise to protect the plaintiff by adding to the cost at which it was to sell to the plaintiff a profit of 10 per cent. in selling to outside parties, and also to refer any outside parties to the plaintiff. There is nothing upon the face of these letters which makes the contract ambiguous in the sense contended for by the plaintiff; that is to say, there is nothing in the letters which contains any indication that the defendant agreed to pay anything to the plaintiff. The parol evidence as to the conversations over the telephone would not, therefore, explain the meaning of an ambiguity as to what the obligation of the defendant was if it made quotations or sales to outside parties, but if left to the jury would be evidence to vary its terms and make it an obligation to pay instead of an obligation to protect. One of the strongest presumptions in the law, of the greatest safety

to the business world in relation to contracts, is that, when parties have put an agreement in writing, the written instrument is presumed to contain the terms to which they have agreed, except in cases of fraud, accident, or mistake. There is nothing to show that an agreement to pay 10 per cent. to the plaintiff was left out of the letters through mistake. The letter of March 13th was written deliberately, according to Mr. Lyman's testimony, for the purpose of putting the understanding between the parties in writing. The present attempt is by introduction of his recollection of what was said over the telephone to put a different term into the alleged contract.

Going into the terms of the contract as deduced from the letters and taking the conversation over the telephone into consideration in determining them, they are still vague and indefinite. What, under its terms, were to be the reciprocal obligations of the parties? Mr. Lyman says:

"We were to have the exclusive sale or agency of this lining," and "they were to add a protection profit of 10 per cent., to be paid to us as our commission or compensation for our work in the matter."

It is not clear whether the plaintiff was to be the agent of the defendant, or its factor, or a purchaser of the merchandise, or whether it was to be paid the 10 per cent. as a profit upon its sales as a purchaser, or as a commission or compensation, either as the defendant's agent or as its factor. There is no time stated, either in the letters or in the oral testimony, during which the uncertain relations between the parties were to continue, although it does appear that the "work in the matter," for which the commission or compensation, it is claimed, was to be paid, was the work done in the past in originating the lining and promoting the sale of it to the government and the contractors.

Under all the terms contended for by the plaintiff, is there any duty or obligation resting upon it, which the defendant could enforce in case of an alleged breach by the plaintiff? I fail to see that there are any mutual obligations, or that there is any consideration moving from the plaintiff. On the whole, the terms of the alleged contract are, in my opinion, too indefinite and uncertain to be enforced. Butler v. Kemmerer, 218 Pa. 242, 67 Atl. 332; Briggs v. Morris, 244 Pa. 139, 90 Atl. 532.

The motion to take off the nonsuit is denied.