## Horner v. Penrod

*Dean A. Bowman* of *Kemmel, Rascona, Yelovich & Bowman,* for plaintiff.
*R. Thomas Strayer,* for defendant.

SHAULIS, *J.* November 17, 1975 — This assumpsit action is before the court without a jury. Plaintiff filed a complaint to which defendants filed

an answer and new matter to which new matter plaintiff filed a reply.

Plaintiff went to work on a farm owned by defendants' father in 1943 and remained there continually until after their father's death.

On September 11, 1970, plaintiff and defendants entered into a written agreement as follows:

"THAT WHEREAS the Parties of the First Part are operating a dairy farm at the present time and the Party of the Second Part is employed in reference to said dairy farm.

"NOW THEREFORE BE IT KNOWN that for and in the consideration of the sum of One Dollar ($1.00), the Parties of the First Part do hereby convey to the Party of the Second Part one-third interest in all that certain real and personal property consisting of land, livestock, farm machinery, feed and such equipment as belongs to the dairy business and any addition or increase thereon, upon the following terms and conditions:

"A. The Party of the Second Part agrees that he will devote all his time and ability to the successful operation of the dairy farm.

"B. The Party of the Second Part will assume one-third of the obligations of the Parties of the First Part on the real and personal property at the signing of this Agreement.

"C. The Party of the Second Part agrees that upon his leaving said business, failure to properly conduct the same, or his death, that the one-third interest in the personal property hereby conveyed shall revert back to the Parties of the First Part.

"IN WITNESS WHEREOF, the said Parties have set their hands and seals this 11 day of September, 1970."

Plaintiff continued to work on the farm and defen-

dants paid him $25 per week, plus his room and board until August 28, 1972, when defendants quit paying the $25 per week and plaintiff continued on another 11 weeks and then he sought other employment.

Plaintiff alleges that defendants, by refusing to pay him after August 28, 1972, were attempting to force him to break the agreement and cause a forfeiture of his interest in the land and personal property.

Defendants argue that he failed to properly conduct the farming operation after his marriage in May of 1971 and that he violated the agreement.

The contract between Phyllis and Mary Ellen Penrod and Ernest Horner states, in part, as follows: "The Parties of the First Part (Penrods) do hereby convey to the Party of the Second Part (Horner) one-third interest in all that certain real and personal property . . ." At first glance, this might appear as an actual and present conveyance of the real property as distinguished from a contract to convey. The difference between the two types of agreements is commented on in Corbin on Contracts, I Vol. ed., 1952, p. 418 and states as follows:

"A conveyance of land must be distinguished from a contract to make such a conveyance. The acts that are necessary and sufficient to be operative as a conveyance are determined by the law of property, not by the law of contracts or by section 4 of the statute of frauds. These acts have varied with the history of property, chief among them being livery of seisin and delivery of a deed. An operative conveyance is a transfer of property, extinguishing the legal relations of the transferor with third persons and creating similar ones between the transferee and third persons. A contract for the sale of land, on the other hand is meant primarily to affect only the

legal relations of the two contracting parties. The conveyance creates 'rights in rem';"

Based on this statement by Corbin, it appears that even with the language "I do hereby convey," the agreement was in reality a contract to convey rather than an actual conveyance. This is supported by the language following "I do hereby convey" which states "upon the following terms and conditions." This language implies a conditional contract rather than an outright conveyance and creates rights between the transferor and transferee rather than creating in the transferee "in rem" rights against all third parties, which would necessarily occur in a conveyance of real property. Assuming that the agreement is a contract in part to make a conveyance of real property rather than an actual conveyance, the question arises as to whether the real property is sufficiently described in the contract to be enforceable under the statute of frauds. Corbin, supra, pp. 481-82 states as follows:

"Further, it is agreed by all that there must be some descriptive identification of the particular tract of land. But if the court is convinced that no fraudulent substitution of property is being attempted and that the land actually agreed upon has been clearly established by all the evidence, including the written memorandum, the surrounding circumstances, and the oral testimony, little time should be wasted in listening to argument that the written description is inadequate."

With regards to the above comment, Phyllis and Mary Ellen Penrod did not own the entire land on which the dairy business is located but only 33 acres of the land. However, both counsel agreed at the pretrial conference that this 33-acre tract would be the only land in question and, therefore, as Corbin

states, "little time should be wasted in listening to argument that the written description is inadequate."

In Pennsylvania, see for example, Suchan v. Swope, 357 Pa. 16, 53 A.2d 116 (1947), where the description "my farm" was held sufficient. Assuming that the one-third interest in real property can be sufficiently identifiable from the contract, can the same be said about the one-third interests in "Livestock, farm machinery, feed and such equipment as belongs to the dairy business and any addition or increase thereon?" It is basic contract law that to constitute a contract, the nature and extent of its obligations must be certain and unambiguous: Lombardo v. Gasparini Excavating Co., 385 Pa. 388, 123 A.2d 663 (1956); Beachler v. Mellon Stuart Co., 354 Pa. 341, 47 A.2d 147 (1946); McArthur v. Rosenbaum Co., 180 F.2d 617 (3d Cir. (1950)). The contract must not be vague or indefinite. See 8 P.L.E. 15-17, §8. It is also recognized that a contractual promise cannot be judicially enforced unless it is sufficiently definite to enable the court to ascertain the intention of the parties to a reasonable degree of certainty. See, P.L.E. supra, and Zukoski v. Baltimore & O.R. Co., 315 F.2d 622 (3d Cir. 1963).

The problem as to the conveyance of the personalty is whether the language "such equipment as belongs to the dairy business" is sufficiently definite so that the nature and extent of the obligation can be ascertained. In Edgcomb v. Clough, 275 Pa. 90, 118 Atl. 610 (1922), the court stated:

"In order that a contract may be enforceable, its terms must be certain and explicit and not vague or indefinite . . . 'The promise or the agreement of the parties to it must be certain and explicit, so that their

full intention may be ascertained to a reasonable degree of certainty. Their agreement must be neither vague nor indefinite, and, if thus defective, parol evidence cannot be resorted to. The contract must be certain and unequivocal in its essential terms either within itself or by reference to some other agreement or matter. In addition to a definite promise, the subject-matter of the agreement must be expressed in such terms that it can be asserted with reasonable certainty. A contract which is so uncertain in respect of its subject-matter that it neither identifies the thing by describing it, nor furnishes any data by which certainty of identification can be obtained is unenforceable . . . Courts can neither specifically enforce contracts nor award substantial damages for their breach when they are wanting in certainty.' "

The question at this point is simply whether "equipment used in the dairy business" identifies the subject matter with "a reasonable degree of certainty." The Pennsylvania case that is remotely similar is Royal Store Fixture Co. v. Bucci, 48 D. & C. 2d 696 (1969). In Bucci, a landowner agreed to purchase "the store fixtures and refrigeration equipment" required for a delicatessen at "competitive prices" in exchange for the supplier's promise to prepare the plans and specifications for the proposed delicatessen building. The court held that in this particular case, the terms "store fixtures and refrigeration" and "competitive prices" were too indefinite and, therefore, no valid contract was made. It should be further noted, however, that even partial execution, such as payments rendered on account of a contract void for indefiniteness, cannot render it definite and valid: Briggs v. Morris, 244 Pa. 139, 90 Atl. 532 (1914).

Assuming for purposes of discussion that the personal subject matter conveyed is not so indefinite as to void the contract, then the question is what, if any, interest does plaintiff Horner have in this property? Like the interest created in the real property, the contract also conveys a one-third interest in the personal property. However, the contract provides that this one-third interest shall revert to the Penrods upon: (1) Mr. Horner leaving the business; (2) failure to properly conduct the same; or, (3) his death. Excluding the first two, it would appear that the greatest interest which he can possibly have is a life estate in one-third of the personal property relating to the dairy business. This life estate is subject to divestment, however, if Mr. Horner would leave the business or his failure to properly conduct the same. It has been stated that where a person creates a life estate in personalty with a remainder over of what is left at the death of such life tenants, the latter is entitled to use the property as it is usually made use of, even though the use results in its destruction: Appeal of Heppenstall, 144 Pa. 159, 22 Atl. 860 (1891). See also 4 P.L.E. 55, §61.

In the present case, Ernest R. Horner has what appears to be a life estate in only one-third of the personal property. His right to use the property is subject to the interests of two other parties which interests are presumably greater since they are also the remaindermen. It also would appear that the two other parties would confine the use of said personal property to the operation of the dairy business, and, since Mr. Horner's only interest in the business after his death would be the one-third interest in the real estate (33 acres), his interest in the personalty seems largely illusory.

This court finds it difficult to conceive that Mr. Horner's interest in the personal property would have any real objective market value, especially in view of his contractual duty to also pay one-third of the obligations of said property. In this regard contracts have also been held unenforceable because the measurement of damages would be too uncertain. See Seiss v. McClintic-Marshall Corp., 324 Pa. 201, 188 Atl. 109 (1936). For a comment of evaluating life estates generally, see P.L.E., Estates in Property, supra, p. 58.

Thus far, our discussion has centered on the subject matter and obligations in relation to the Penrods. Let us now turn to the problems evolving around the obligations of Mr. Horner. The contract as it relates to Mr. Horner appears to be one for services. The contract states that Mr. Horner is presently employed in the dairy business and that he agrees "that he will devote all his time and ability to the successful operation of the dairy farm." The problems of definiteness mentioned previously are equally applicable to services. "A contract, to be valid and enforceable, must be sufficiently specific and certain with respect to such matters as to the *type* and *amount* of services to be rendered thereunder . . ." P.L.E. Contracts, supra, p. 18 (emphasis supplied); Zukoski v. Baltimore & O.R. Co., supra. Nothing in the contract states the nature or the amount of the services unless it can be inferred that his employment as mentioned in the contract operates to identify the type and amount of services to be performed.

The contract also provides that Mr. Horner should assume one-third of the obligations on the real and personal property. Even assuming that the personal property involved in the contract can be ascertained

with a reasonable degree of certainty, can the same be said about the obligations incurred by Mr. Horner. It appears that uncertainty is present not only as to what personal property is involved, and the type and amount of services to be performed, but also as to what obligations are to be borne by Mr. Horner in relation to both the real and personal property.

A further problem with the contract concerns the fact that the conveyance by the Penrods of the real and personal property is made upon the "condition" that Mr. Horner devote all of his time and skill to the business as well as assume one-third of the obligations. The problem arises as to the uncertainty of time when such conditions would have been satisfied thereby creating the duty on the part of the Penrods to convey the property. Assuming Mr. Horner begins to devote his full time to the business and begins to assume one-third of the obligations, whatever they are, when is the condition satisfied so as to impose a duty on Phyllis and Mary Ellen Penrod to convey? The contract is again unclear and ambiguous. Even though the law disfavors destruction of contracts for uncertainty, this written contract on its face is too indefinite to be enforced: Rossmassler v. Spielberger, 270 Pa. 30, 41, 112 Atl. 876 (1921).

The problem in this case is the extent to which parol evidence can be admitted in relation to the written contract. The Supreme Court has held that in the absence of actionable fraud, mistake or accident, where a written agreement on its face appears to be the entire contract between the parties, parol evidence as to preliminary negotiations, oral agreements, promises or representations is inadmissible if it adds to, modifies or conflicts with the

terms of the written agreement: Lefkowitz v. Hummel Furniture Co., 385 Pa. 244, 122 A.2d 802 (1956); Gianni v. Russell & Co., 281 Pa. 320, 126 Atl. 791 (1924). This rule is one of substantive law, not evidence: O'Brien v. O'Brien, 326 Pa. 66, 66 A.2d 309 (1949).

We must conclude that the written contract is not simply ambiguous but rather is vague and indefinite and parol evidence would not be admissible to resolve the vagueness. As stated in Summary of Pennsylvania Jurisprudence, Evidence, § 382, 370:

"In other words, where a written contract is ambiguous or conflicting, or its meaning is doubtful or obscure, parol or extrinsic evidence is admissible to clarify the ambiguity and to resolve the doubts, in order to ascertain and determine the intention of the parties.

Citing Foulke v. Miller, 381 Pa. 587, 112 A.2d 124 (1955); Waldman v. Shoemaker, 367 Pa. 587, 80 A.2d 776 (1951). The parol evidence rule is, therefore, inapplicable when parol evidence is offered only for the clarification of ambiguous terms. But the problem associated with the parol evidence rule and its exception presuppose the existence of a valid contract. As stated in the Summary of Pennsylvania Jurisprudence, supra, p. 357.

"The rule, commonly known as the 'parol evidence rule,' which excludes evidence of prior or contemporaneous oral agreements which would vary a written contract, presupposes the existence of a valid written contract. The rule, moreover, applies only to a written contract. The rule, moreover, applies only to a written contract which is in force as a binding obligation."

The parol evidence rule does not come into play unless it is first established that a binding and en-

forceable contract is in effect. A more basic question arises then as to what extent parol evidence is inadmissible, apart from the parol evidence rule, to prove a binding and enforceable written contract. Some indication of the admissibility of parol evidence to prove an enforceable written contract is found in Edgcomb v. Clough, supra, wherein the court stated:

" 'In order that a contract may be enforceable the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty. *Their agreement must be neither vague nor indefinite, and if thus defective, parol proof cannot be resorted to.'* " (Emphasis supplied.)
112 Atl. 135 (1920); and Royal Store Fixture Co. v. Bucci, supra, for the same language.

It, therefore, appears that if a written agreement is vague and indefinite on its face and that the obligations of the parties cannot be ascertained with reasonable certainty, parol evidence cannot be admitted to show what the parties' obligations were.

We permitted parol evidence in the trial of the case over the objections of defense counsel for the purpose of explaining the "ambiguity" in the contract, but it appears that there is disagreement between the parties as to what their actual obligations are and not merely whether they are performed. The proffered parol evidence was not simply a matter of clarifying an ambiguity but an attempt to prove the substance of the written contract itself, namely, the obligations of the parties.

After hearing all of the testimony, arguments of counsel and reviewing the exhibit, we must conclude that the agreement entered into between the

parties to this litigation on September 11, 1970, is unenforceable because it is so vague and indefinite that the court cannot ascertain the intentions of the parties to a reasonable degree of certainty.