# Interstate Securities Company *v.* Third National Bank, Appellant.

*Principal and agent—Authority of agent—Corporations—Directors.*

1. Where a bank dealing with a person in possession of bonds knows that such person is not acting on his own behalf, but as the agent and representative of the owner of the bonds, it is bound to inquire into the authority of the agent, and if it accepts the bonds in pledge, and it turns out that the agent had no authority to pledge them, the bank cannot complain if the owner repudiates the transaction; and in such a case it is immaterial that the agent was a director and manager of the bond department of the corporation which owned the bonds, if it appears in fact that the agent had no authority to pledge them as collateral to a promise to pay the debt of another.

2. In an action of replevin by the owner of the bonds against the bank to recover the bonds, it is proper to admit in evidence the written instructions of the agent showing that he had no authority, where the fact of the agency, and the defendant's knowledge of such fact at the time of the transaction, had been made to appear.

3. In such a case there is no error in excluding an offer made by the defendant to show by the agent, that when acting for the plaintiff under written instructions, he sometimes acted upon his own discretion, not strictly in line with the instructions; and that when he did so, his acts were accepted by the company; and this is especially so where the offer does not suggest any discretion extending to the binding of the company by a promise to pay the debt of another, and the pledge of securities of the company therefor.

Argued Jan. 12, 1911. Appeal, No. 208, Jan. T., 1910, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1904, No. 1365, on verdict for plaintiff in case of Interstate Securities Company v. Third National Bank. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Replevin for bonds. Before BRÉGY, J.

The facts are stated in the opinion of the Supreme Court.

The defendant presented the following points:

3. The bonds in suit being negotiable, they would pass by delivery and the defendant was in no default in accept-

ing them as security for the payment of the $1,011.80 and was not obliged to make inquiry as to the right of Mr. Ely to pledge them. *Answer:* Refused. [10]

4. The bonds in suit being negotiable, the defendant was not bound to know or to inquire as to any limitations of the authority of Mr. Ely to dispose of them, and hence if the jury should find that Mr. Ely did exceed his authority in pledging the bonds, yet as they were negotiable, if the defendant did not know of any limitation of his authority, and there is no evidence that any officer of the defendant did so know, the defendant had a right to accept the bonds and hold them as security for the payment of the said sum of $1,011.80, upon the withdrawal of the sale of the $10,000 of the bonds of the West Chester, Kennett and Wilmington Electric Railway Company. *Answer*: Refused. [11]

5. What was the object of the plaintiff or of Mr. Ely in preventing the sale of the $10,000 of the bonds of the West Chester, Kennett and Wilmington Electric Railway Company on April 20, 1904, or whether the plaintiff, or Mr. Ely, or any other person received any benefit or advantage by the withdrawal of said bonds from sale on that day, is not a matter of consideration in this case. *Answer:* Refused. [12]

If the jury find that the bonds in suit were handed by Mr. Ely, on April 20, 1904, to Mr. Wood on behalf of the Third National Bank, as security for the payment of the sum of $1,011.80, under a promise by Mr. Ely that the said sum would be paid the next day if the Third National Bank would withdraw from sale the $10,000 of the bonds of the West Chester, Kennett and Wilmington Electric Railway Company advertised to be sold that day, for the defendant, by Messrs. Barnes and Lofland, and that relying upon that promise the sale of the said $10,000 of bonds was withdrawn, the jury should find for the defendant and that the defendant is entitled to hold the bonds in suit till the said sum of $1,011.80, together with interest from April 20, 1904, is paid to the defendant, subject to

the deduction of such sums as the defendant has received for interest on the bonds in suit. *Answer:* Refused. [13]

Under binding instructions the verdict was: "We, the jury, find that the title to the bonds in suit was at the time of suit brought, and now is, in the plaintiff, and we find for the plaintiff, and that the value of the two bonds in suit is $1,900, and that the plaintiff has sustained damages by the detention of said bonds in the sum of $603.34, and costs." Judgment was entered on the verdict.

*Errors assigned* were various rulings on evidence and instructions as above, and in directing the jury to find a verdict as quoted above.

*Theodore F. Jenkins,* with him *Humbert B. Powell,* for appellant.—The presumption being that the defendant was a bona fide holder for value the burden was upon the plaintiff to rebut that presumption. It was therefore a question for the jury as to whether such presumption had been overcome: Penn. Bank v. Frankish, 91 Pa. 339; Phelan v. Moss, 67 Pa. 59.

There was a presumption of Mr. Ely's authority, from his being a director and officer of the plaintiff: Singer Mfg. Co. v. Christian, 211 Pa. 534; American Car & Foundry Co. v. Water Co., 218 Pa. 542; Adams Express Co. v. Schlessinger, 75 Pa. 246.

An agreement by an agent of a corporation made in the course of the business intrusted to him is binding on the corporation although in excess of his instructions: Adams Express Co. v. Schlessinger, 75 Pa. 246; Hill v. Trust Co., 108 Pa. 1.

*Wm. Hepburn Russell,* with him *Wayne P. Rambo* and *Ormond Rambo,* for appellee.—The plaintiff's agent, Ely, was a special agent: Ryman v. Gerlach, 153 Pa. 197; Westinghouse v. German Nat. Bank, 188 Pa. 630; Lance v. Deacon, 15 Phila. 318; Rafferty v. Haldron, 81* Pa. 438; Reading R. R. Co. v. Johnson, 7 W. & S. 317; Thomp-

son v. Sproul, 179 Pa. 266; Campbell v. Home Assn., 163 Pa. 609.

The defendant bank knew the bonds belonged to plaintiff company: Buffalo Loan, Trust & Safe Dep. Co. v. Medina Gas & Elec. Lt. Co., 162 N. Y. 67 (56 N. E. Repr. 505).

The defendant received and holds bonds as collateral for interest on the debts of a third person: Sloan v. Brown, 228 Pa. 495; Kern's Estate, 176 Pa. 373; Garrard v. R. R. Co., 29 Pa. 154; Fisher v. Brown, 104 Mass. 259; Germania Safety-Vault & Trust Co. v. Boynton, 71 Fed. Repr. 797; Bank of New York National Banking Association v. American Dock and Trust Co., 143 N. Y. 559 (38 N. E. Repr. 713); Hanover National Bank v. American Dock & Trust Co., 75 Hun, 55 (26 N. Y. Supp. 1055).

Persons dealing with a corporation in Pennsylvania have notice that the power of its officers is limited by by-laws or resolutions: Merchants' Bank v. Livingston, 74 N. Y. 223.

The fact that the bonds were negotiable does not alter the case, as the bank knew that the plaintiff corporation owned the bonds: Wilson v. Wilson-Rogers, 181 Pa. 80; Buffalo Loan, Trust & Safe Dep. Co. v. Medina Gas & Elec. Lt. Co., 162 N. Y. 67 (56 N. E. Repr. 505); Garrard v. R. R. Co., 29 Pa. 154; Fisher v. Brown, 104 Mass. 259.

The defendant bank having actual notice of the agency of Ely and taking the bonds from him on his express declaration of his agency for the Interstate Securities Company was bound to inquire whether his agency was general or special, and his agency being special and shown by a writing in his possession, the bank took the bonds charged with notice of the special agent's lack of authority to pledge them as collateral for an existing debt of a third party to the bank. Hence the bank is not an innocent holder for value and without notice: Loudon Savings Fund Soc. v. Bank, 36 Pa. 498; Edwards v. Dooley, 120 N. Y. 540 (24 N. E. Repr. 827); Moore v. Skyles, 33 Mont. 135 (82 Pac. Repr. 799, 114 Am. St. Repr. 801);

Jackson Paper Mfg. Co. v. Commercial Nat. Bank, 199 Ill. 151 (65 N. E. Repr. 136; 93 Am. St. Repr. 113); Rossiter v. Rossiter, 8 Wend. (N. Y.) 494; Towle v. Leavitt, 23 N. H. 360 (55 Am. Dec. 195); Brown v. Johnson, 20 Miss. 398 (51 Am. Dec. 118); Cobb v. Glenn Boom & Lumber Co., 57 W. Va. 49 (49 S. E. Repr. 1005; 110 Am. St. Repr. 734).

OPINION BY MR. JUSTICE STEWART, April 24, 1911:

The Vandegrift Construction Company had contracted with the West Chester, Kennett and Wilmington Electric Railway Company to build and equip the latter's line of road. In some way, not explained in the evidence, but presumably under the terms of the contract, the construction company had acquired large holdings in the bonds and stock of the railway company. Its necessities required the borrowing of considerable sums of money in connection with the building of the road, and for this indebtedness, owing to banks and trust companies, including among others the Third National Bank, here the appellant, it had pledged these securities. Encountering financial embarrassment, the construction company applied to the plaintiff company, doing business in the city of New York, for assistance in procuring an extension of this indebtedness, and obtaining a loan of $100,000 to insure the completion of the road. The latter company devised a scheme which met with the approval of the Integrity Trust Company, holder of much of the Vandegrift company's indebtedness. The co-operation of these two companies was essential to the success of the scheme, and the basis and terms of their joint action had been agreed upon. The scheme contemplated the employment for collateral purposes, of some $47,500 in the bonds of the Mobile, Jackson and Kansas City Railroad Company belonging to the plaintiff company, in substitution for a larger amount of the securities of the West Chester, Kennett and Wilmington Railway Company, held by the Integrity Trust Company as collateral for the indebted-

ness of the Vandegrift company; which latter, being released, were to be used in connection with the remaining bonds of the Mobile, Jackson and Kansas City Railroad Company in securing the new loan of $100,000 necessary to complete the line of railway. On April 12, 1904, the president of the plaintiff company was in Philadelphia consulting about the arrangement; and while here, in company with the president of the construction company, called upon the cashier of the defendant bank, and advised him as to the scheme and the agreement his company had with the Integrity Trust Company to accomplish it, depending, however, on the ability of the Vandegrift company to get an extension on their existing indebtedness. He testified that he told him that all of the $100,000 which it was contemplated raising would be required for the completion of the road, and that none of it could be applied to the indebtedness of the Vandegrift company. For the purpose of carrying out the proposed plan, the plaintiff company, a week later, on April 19, intrusted $47,500 in the bonds of the Mobile, Jackson and Kansas City Railroad Company to. Mr. Ely, a director of the company, and the chief officer of its bond department, with instructions to take them to Philadelphia and upon certain conditions being complied with to deliver them to the Integrity Trust Company. Upon arriving in Philadelphia Mr. Ely learned that some of the indebtedness of the Vandegrift company was pressing for immediate payment, and that $7,000 would be required to meet these claims to prevent a sale of the bonds held in pledge therefor. Included among these was the overdue debt to the defendant bank, and for the default on which the bank had advertised at public sale the following day the bonds of the West Chester, Kennett and Wilmington Railway Company it held in pledge. Mr. Ely at once communicated by phone this fact to the plaintiff company, and asked permission, to meet this unexpected condition, to borrow $7,000 of the Integrity Trust Company by pledging ten of the Mobile bonds intrusted to him. On the following morning he

received authority from the plaintiff to pledge ten of these bonds for this purpose, only, however, on certain expressed conditions, and with explicit instructions in regard thereto. Instead of observing these instructions to borrow on certain conditions the $7,000 from the Integrity Trust Company on a pledge of the bonds, wherewith to meet all the pressing liabilities of the Vandegrift company, he pledged to the Third National Bank two of the bonds to secure the sum of $1,011.80 interest on the indebtedness to that company, and three other bonds to another bank for a similar purpose. The Third National Bank would consent to a withdrawal of the bonds from sale on no other terms. Ely represented to the bank that the securities company would pay the interest in a few days, but the bank requiring security, Ely gave to it the two Mobile bonds as collateral to his promise. After this had been done, the Integrity Trust Company declined to release the securities it held except on payment of $7,120 interest on the Vandegrift loan held by it. The plaintiff company being advised of this demand by the Integrity Trust Company, refused to comply, and the whole transaction failed, with no other result than that the defendant bank had as security for the interest due it on the Vandegrift indebtedness two of the plaintiff's bonds. The plaintiff company as soon as advised of the action of Mr. Ely in pledging these Mobile bonds, repudiated it and demanded a return of the bonds. This being declined an action of replevin was brought for their recovery, resulting in a verdict for the plaintiff.

The questions raised on the appeal are free from difficulty. The fact that the bonds pledged were payable to bearer and, therefore negotiable is without significance. The defendant bank fully understood in dealing with Ely that the latter was not acting on his own behalf, but as the agent and representative of the plaintiff, and that the bonds he offered in pledge were not his bonds but belonged to the plaintiff. So much clearly appears from the receipt given Ely by the bank for the bonds. He had promised

that the plaintiff company would pay the arrearages of interest on the Vandegrift loan in a day or two if the bank would withdraw the West Chester, Kennett and Wilmington Railway bonds from sale, and the Mobile bonds were accepted by the bank as collateral to this promise. However much another who had obtained the bonds innocently from Ely, might have relied on the presumption of his ownership of them, all such presumption in the present case was wholly overcome by the facts. Nor is there anything in the fact that Ely was a director of the plaintiff company and its chief officer in charge of its bond department that can avail the defendant company. In neither capacity had he authority to pledge or otherwise dispose of the securities or other property of the company. It is too obvious for discussion that neither as director nor as manager of the bond department, could he bind the company by an unauthorized promise to pay the debt of another, even if it were to obtain special advantage to the company. No more could he give title to property belonging to the company which he pledged as collateral to such promise. No presumption of authority arises in such case. The fact appearing, as it unquestionably did, that the bank knew it was dealing with an agent, the burden was upon it to show the authority of the agent to do what he did. It is a universally recognized doctrine that when one deals with an agent he is bound to ascertain the nature and extent of the agent's authority. He may not trust to a mere presumption of authority, or to any mere assumption of authority by the agent; but must trace the authority to its source if he would be protected. Had the bank done so in this instance—and clearly it was put upon inquiry—even had it inspected the written instructions which Ely had with him at the time of the transaction, it would have discovered that the pledging of the bonds for the Vandegrift debt was not only unauthorized, but in direct violation of the instructions which he had received. These instructions were admitted in evidence only after the fact of Ely's agency, and defendant's knowl-

edge of such fact, at the time of the transaction, had been made to appear. There was no error in admitting the evidence. Nor was there error in excluding the offers made on part of the defendant, to show by Ely, that when acting for the plaintiff under written instructions, he sometimes acted upon his own discretion, not strictly in line with the instructions; and that when he did so his acts were accepted by the company. One sufficient objection to these offers, to say nothing of others quite as conclusive, is that they did not even suggest a discretion extending to the binding of the company by a promise to pay the debt of another, and the pledge of securities of the company therefor.

Upon a review of the case, and a careful study of the evidence, we find nothing that called for a submission of the case to the jury. There was no issue of fact. Ely, called by the defendant, admitted that he was without authority to make or pledge these bonds to the bank to secure the interest on the Vandegrift loan. When asked the question whether he had such authority, his reply was: "No, sir, that was on my own initiative;" and again, when the question was repeated, he replied: "No, sir, I was only authorized to put the bonds with the Integrity Company in order to get the money." Had he observed his instructions and delivered the bonds to the Integrity Company upon failure of the scheme, the plaintiff would have received back all its bonds. As it is $2,000 of its bonds, by the unauthorized act of its agent, are held in pledge by the defendant to answer for a debt for which the plaintiff was never liable. The only consideration passing from the defendant for the pledge was the delay for a few days at most in selling its original securities. In what we have said we have sufficiently answered the assignments of error. They are overruled, and the judgment is affirmed.