# Campbell *v*. Manatawny Bessemer Ore Co., Appellant.

*Corporations—Contracts—Authority of vice-president.*

Where the directors of a corporation owning a tract of ore land pass a resolution authorizing the officers of the company to enter into a contract for the sale of its preferred stock and to incur the necessary expenses incident thereto, the vice-president and general manager may make a contract binding upon the corporation for the services of an expert in making an examination of the ore, and this is the case although the by-laws provide that the president shall have general management of the company's affairs and sign all contracts and the duties of the vice-president are limited to presiding over meetings in the absence of the president, and the duties of the general manager are not prescribed; and all the more is such a contract binding if it appears that a bill for the services was several times presented to the company, and that no disapproval of the action of the vice-president was made until after the expiration of two years from the time the services were rendered.

Argued Oct. 12, 1915. Appeal, No. 27, Oct. T., 1915, by defendant, from judgment of Municipal Court, Philadelphia Co., Aug. T., 1914, No. 505, on verdict for plaintiff on case tried by the court without a jury in suit of L. J. Campbell v. Manatawny Bessemer Ore Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for expenses incurred. Before BONNIWELL, J.

The opinion of the Superior Court states the facts.

Judgment was entered for plaintiff for $365.50. Defendant appealed.

58   CAMPBELL *v.* MANATAWNY B. ORE CO., Appellant.

Assignment of Error—Opinion of the Court.   [62 Pa. Superior Ct.

*Error assigned* was in entering judgment for plaintiff.

*E. Cooper Shapley,* for appellant.—The contract was not binding on defendant: Millward-Cliff Cracker Co.'s Est., 161 Pa. 157; Sword v. Reformed Congregation, 29 Pa. Superior Ct. 626; Allegheny County Workhouse v. Moore, 95 Pa. 408; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Clarkson v. Keystone Oil Cloth Co., 8 D. R. 593; Patton v. Ligonier Coal Co., 12 D. R. 456; De Forest v. Northwest Townsite Co., 241 Pa. 78.

*S. G. Birnie,* of *Birnie & Raspin,* for appellee.—The company was bound by the action of the vice-president: DeForest v. Northwest Townsite Co., 236 Pa. 125; Ramble v. Penna. Coal Co., 47 Pa. Superior Ct. 28; Winter v. Iron City Stamping Co., 51 P. Superior Ct. 11; Clark v. Freeport, Clay, Etc., Co., 52 Pa. Superior Ct. 1; Buckwalter Stove Co. v. Trust Co., 53 Pa. Superior Ct. 558.

OPINION BY HENDERSON, J., March 1, 1916:

The defendant is a corporation owning a tract of ore land in Berks County.   Charles M. Allen was president of the company; M. J. Person was vice-president and general manager, and S. Robinson, Jr., was secretary. The evidence discloses the names of two or three other persons who were interested in the company.   There was testimony that Fred C. Simons was attorney for the company.   The business seems not to have been progressing to the satisfaction of the officers of the company and a movement was inaugurated to secure additional funds to promote its business.   The plaintiff was largely interested in the manufacture of iron in the State of Ohio and was an expert on the value of ore property.   His business standing brought him in contact with persons of financial ability and these considerations led Mr. Person and Mr. Simons to apply to him to aid in financing their company.   After a conference with them at Pittsburgh he arranged to bring an iron ore expert from the

west and examine the property of the defendant for the purpose of acquiring such information with reference to its extent and value as might induce capitalists to invest money therein. An examination was made and the plaintiff paid the charge of the western expert and the expenses incident thereto amounting to $350.00. It was agreed in Pittsburgh by Mr. Person and Mr. Simons that the cost of the inspection should be borne by the company. Shortly after the examination a bill was sent by the plaintiff to Person, as vice-president and manager, and subsequent requests for payment to him, to the company and to Simons were sent by the plaintiff by mail. The bill not having been paid this action was brought to recover the amount of it. No witnesses were called for the defense and the case is to be disposed of on the testimony presented by the plaintiff. There is no dispute as to the fact of the plaintiff's examination of the property, as to the value of the services rendered by him and his assistant, and the reasonableness of the bill presented. The defense is that the vice-president and general manager was without authority to incur the indebtedness, by reason of the provisions of the by-laws of the corporation, which invest in the president the general control and management of its business affairs, and which provide that no agreement, contract or obligation other than a check involving the payment of money for the credit of the company shall be made without the consent of a majority of the directors, and that all contracts and agreements and obligations involving the company must be signed by the president or in his absence, the vice-president and treasurer. The duties of the vice-president as prescribed in the by-laws are to preside at all meetings in the absence of the president or where there is a vacancy in the office of the president. The duties of the general manager are not prescribed. The evidence shows that Mr. Person was the active officer in the company and was the principal official engaged in the management of its affairs. That the by-laws may define and limit the

rights, duties and powers of the officers of a corporation is unquestioned. And if the case stood solely on the disability expressed in the by-laws the plaintiff would be without redress notwithstanding he performed his undertaking in good faith and with intelligence, but the action of the corporation as set forth in the minutes of December 8, 1911, included a resolution "That the officers of this company be, and they are hereby authorized and directed to enter into an agreement or agreements with brokers or other persons engaged in the sale of securities, for the sale of any portion of the $2,000,000 of the preferred stock of this company at par, as may be deemed advisable, and pay a commission not to exceed ten per cent. and the necessary expenses thereto not to exceed an additional ten per cent. for said expenses in effecting said sale." This action was taken evidently with the intention of raising money for the use of the company by the sale of all or a portion of the unissued preferred stock controlled by the company. The negotiation with the plaintiff was engaged in after this resolution had been passed and after efforts had been made in other quarters to secure money with which to advance the company's interests. It is obvious that the certificate of responsible and competent persons as to the condition of the defendant's property, its extent and value, would be beneficial if not absolutely necessary to bring about a sale of this stock. What the company had to exhibit was a body of ore largely undeveloped. The description of the property unsupported by evidence of experts as to the quality and volume of the ore would have little influence in inducing investors to take the stock. Assistance was, therefore, needed to enable the officers to finance the company and this is what the plaintiff was requested to furnish. Just what form the financing was to take does not clearly appear from the testimony. It was the evident purpose of the company when the resolution was adopted to sell the preferred stock. Reference is made in the testimony of Mr. Simons

to the obtaining of a loan. Whether this was to take the form of a purchase of the preferred stock, or was to be secured by that stock, or otherwise, is not shown, but the learned judge of the trial court has evidently found that the plaintiff was acting at the instance of the officers of the company who were authorized by the resolution quoted to raise money by the disposing of the stock. And in view of the authority so granted we think the court was right in concluding that there was sufficient authority in the officers to make the contract on which the suit is brought. The evidence is uncontradicted that it was made as set forth by the plaintiff. There is testimony that Mr. Allen, the president, had knowledge of the negotiation and that he approved of it. And the testimony also shows that part of the business was carried on in the presence of the secretary in the office of the company. It is denied by the latter that he knew for what purpose the parties had met there, but that is a question of fact on which the trial judge has passed. The testimony that the report of the experts was forwarded to the company was before the court as well as that which showed that the plaintiff several times presented his bill to the officers of the company for the services rendered and that no disapproval of the action of the general manager or of any other officer of the company was given during a period of about two years which elapsed between the rendering of the service and the bringing of the action. If the company accepted the result of the plaintiff's services, and, after notice through the regular channels of the action of the vice-president and general manager in making the contract and of the president's assent to what was being done, without protest or objection, it is now too late to allege the lack of authority. The evidence was of such a character as to support the conclusion of the learned trial judge that the plaintiff's services were performed under a binding contract.

The judgment is, therefore, affirmed.