Kelly, Murray, Inc., *v.* Lansdowne Bank & Trust Co., Appellant.

Argued January 13, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Howard M. Lutz, of Lutz, Ervin, Reeser & Fronefield,* with him *Lewis Lawrence Smith,* for appellant.—It was the duty of appellee to inquire into and ascertain the extent of the authority of appellant's president: Long v. Coal & Nav. Co., 292 Pa. 165; DeForrest v. Townsite Co., 241 Pa. 78; Deliman v. Union, 275 Pa. 571.

The general rule is that the president of a bank has no authority to transact other than the ordinary business of the corporation unless he has been given special authority of the board of directors: First Nat. Bank v. Hoch, 89 Pa. 324; Allegheny Co. Workhouse v. Moore, 95 Pa. 408; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Bangor R. R. v. Slate Co., 203 Pa. 6; Workingman's L. & B. Assn. v. Heaton, 233 Pa. 173; McKibbin v. Dyeing & Finishing Co., 227 Pa. 153; Meadville Theological School v. Hempstead, 290 Pa. 222; Millward Cliff Cracker Co.'s Est., 161 Pa. 157.

Appellant's president had neither the authority to sell appellant's Barker building on the terms agreed to by appellee's purchaser nor the authority to employ a broker to sell the same: Hamill v. Council Royal Arcanum, 152 Pa. 537; Rose v. Chevra Kadisho, 215 Pa. 69;

Loeffler's Est., 277 Pa. 317; Shuman v. Ins. Co., 265 Pa. 38; Potter's Nat. Bank v. Twp., 260 Pa. 104; Schmitt v. Burns Fleming Co., 67 Pa. Superior Ct. 449; Lincoln v. Christian, 94 Pa. Superior Ct. 145.

A corporation cannot be held liable for a broker's commission or for services rendered to a corporation when the negotiations or contracts giving rise thereto have been made with an unauthorized president of the corporation: Allegheny Co. Workhouse v. Moore, 95 Pa. 408; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; DeForrest v. Townsite Co., 241 Pa. 78; McKibben v. Dyeing & Finishing Co., 227 Pa. 153; Clarkson v. Oil Co., 8 Pa. Dist. R. 593; Copeland v. Tannery Co., 142 Pa. 446.

The authority to the officers was to sell for cash, and no one had authority to take back a purchase-money mortgage: Paul v. Grimm, 165 Pa. 139; s. c., 183 Pa. 330; Pepperday v. Bank, 183 Pa. 519; Lewis v. Lewis, 203 Pa. 194.

*E. LeRoy van Roden,* with him *Robert B. Greer,* for appellee.—The president of the bank had authority to contract with plaintiff: Foster v. Berg & Co., 104 Pa. 324; Culver v. Ice Co., 206 Pa. 481; Curtis Ko Eune Co. v. Manayunk Co., 260 Pa. 340.

OPINION BY MR. JUSTICE SADLER, February 5, 1930:

The Lansdowne Bank & Trust Company, defendant, was formed, in 1927, by the merger of separate institutions. As a result, it became the owner of two buildings, which were no longer required for its corporate purposes. Arnold was president of the company, and a member of both the board of directors and the finance committee. The former met regularly once a month, and, between times, the latter, composed of six members of the board,. convened weekly to transact any necessary business. The wisdom of disposing of both properties in so far as the record discloses, was first considered,

at a regular meeting of the directors on September 6, 1927, when one Miles made a lump bid, which was rejected, and "the officers were instructed to make sale of the premises 'as is' at a price of not less than $250,000 net." Three real estate brokers, besides the plaintiff, were consulted, though no exclusive agency to sell was given to any. Later, the president reported to the board an offer of $55,000 for the less valuable structure, and, on November 18th, the "officers" were directed to consummate the transaction, and convey to one Greenberg.

At a meeting of the finance committee on December 2d, offers for the second building were presented and discussed, but no definite action was taken. Five days later, Kelly, who acted as the representative of the plaintiff firm in this transaction, talked with the president, stating that a client of his might be interested, and was told that no price less than $200,000, without commission, would be considered, but that arrangements could be made to accept, in part payment, a purchase-money mortgage, bearing interest at six per cent, due in five years. On the 9th, the broker phoned to Arnold advising that he had secured a buyer who was willing to purchase for the sum named, but preferred to substitute for the suggested mortgage, a ground rent, payable in ten years, carrying a rate of interest less than six per cent. Though contradicted, his evidence must be taken as true, in the present proceeding, since the jury rendered a verdict for plaintiff. He was told to make an offer in writing, which would be submitted at the meeting of the finance committee to be held the same evening. Accordingly a communication was sent, in which was expressed a willingness to purchase for $200,000, without commissions, of which $175,000 was to be paid by a ten-year ground rent, with interest at five per cent for the first five years, increasing by one-half per cent for the remaining period. Kelly testified he had, in the previous conversation on the same day,

advised Arnold that he would execute a six per cent mortgage if insisted on, but no proposition to buy on such terms appears in the letter forwarded to the bank, nor was such knowledge brought to the attention of the finance committee or board of directors, as far as the record discloses. When the former met, it considered three offers, one being that of plaintiff, and another tentative proposition. It determined to sell to Simonds, through another agent, Friedman, accepting in part payment a six per cent mortgage. This action was reported to the directors at their next meeting on December 16th, and approved by them.

Plaintiff claimed it accepted the offer to sell made by the president, Arnold, having secured a client able and willing to buy, and that the letter written was intended merely as the submission of an alternative proposition fixing the terms of settlement. It demanded payment of a commission on the purchase price paid by the buyer, not secured through any act on its part, and brought suit to recover. From the judgment entered on a verdict in its favor, this appeal was taken by the bank. Though several matters are assigned as error, the real question for our consideration is the authority of Arnold, the president, to individually agree to sell the bank building, and bind defendant to pay compensation to a broker who had secured a purchaser, for we must accept as accurate, for present purposes, the statement of Kelly that his client was ready and willing to comply with the terms proposed by Arnold. If the latter had power to contract for the bank, and did agree to sell, and the broker supplied a buyer, on the terms fixed, he was entitled to a commission, though, for other reasons, the transaction was not consummated: Rick v. Moyer, 296 Pa. 176.

The burden of proving that a particular act was done on behalf of another, so as to obligate him, is upon the party who alleges it: Dougherty Distillery Warehouse Co. v. Binenstock, 293 Pa. 566; Long v. Lehigh Coal &

Nav. Co., 292 Pa. 164. Even though Arnold had agreed to sell to the client of plaintiff for a definite sum, and failed to see that his contract was carried out by the officers of the bank, resulting in loss to the claimant, the defendant bank cannot be held liable, unless his conduct was expressly authorized or ratified: Allegheny Co. Workhouse v. Moore, 95 Pa. 408; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Harvey v. Schuylkill Trust Co., 199 Pa. 421. Parties, who deal with officers of a corporation, are bound to take note and advise themselves of the extent of their powers to act for the company: Deliman v. Greek Catholic Union, 275 Pa. 571. This power may be implied where the transaction undertaken is within the line of ordinary duties imposed on such individual (Stilley v. McNeal, 219 Pa. 533), even though there be some unknown corporate by-law to the contrary (Act of May 12, 1925, P. L. 615), but there can be no liability imposed when the act performed is beyond the scope of usual duties allotted: First Nat. Bank v. Hoch, 89 Pa. 324; Bangor & Portland Ry. Co. v. American Bangor Slate Co., 203 Pa. 6. ' To affect the company, the authorization must be plainly shown to exist, either by the minutes of the corporation, or by proof of other acts and circumstances from which a legal implication of power to bind it follows: Turner v. Baker, 225 Pa. 359; Gross v. Kincaid, 83 Pa. Superior Ct. 514. Where the evidence is undisputed, the trial court must determine its extent as a matter of law: Humphrey v. Brown, 291 Pa. 53.

Plaintiff's claim in the present case rests on the assertion that Arnold, the president, had the right to make sale of its property for the bank, and that the agreement to comply with the terms, suggested by him as acceptable, by one willing and able to carry out the bargain, bound the corporation. It is contended that, since it failed, under these circumstances, to convey to the buyer secured, a liability for commissions arose. There is no evidence that the finance committee or board

of directors accepted any offer of Kelly, nor did either body know of the willingness of the one he represented to execute, in part payment, a six per cent mortgage, the only proposition submitted to it being found in the writing, which offered a ground rent, bearing a less rate, in lieu thereof, and it, therefore, cannot be said to have ratified an agreement of the president to convey on the terms first mentioned. The only matter to determine is whether plaintiff showed that Arnold had authority to make the sale without the consent of others. He was but one of the "officers" to whom such a power had been given.

"The president is the executive agent of the board of directors within the ordinary business of the company, but, beyond that, he cannot bind the corporate body without special authority. In the absence of anything in the act of incorporation or by-laws bestowing special power upon the president, he has from his mere official position no more control over the corporate property and its funds than any other director": 1 Savidge on Corporations, 652. "A general or managing officer or agent......has authority to do any act on its [the corporation's] behalf which is usual and necessary in the *ordinary course* of the company's business...... The fact that he occupies the position of general or managing agent implies, without further proof, his authority to do anything that the corporation itself may do so long as the act done *pertains to the ordinary business of the corporation*": 14A, C. J. 359, 360, quoted with approval in Long v. Lehigh C. & N. Co., supra, page 172. There was no evidence produced in the present case to show that Arnold, on his own initiative, had the right to make sale, and thus bind the defendant. Indeed, all the minutes of the corporation offered showed that the "officers" were to carry on the negotiations on its behalf, and all necessary steps to effectuate the sale made were taken by either the finance committee or the board itself. It cannot be said that the sale of real estate of the

value of $250,000 by a bank with a capitalization of $375,000 was an ordinary routine transaction which an officer, the president, had implied power to consummate without consultation with the other regularly constituted managers of the institution. Kelly himself knew, and was bound to know, that any offer or acceptance must be submitted to the finance committee.

The learned court below reached the contrary conclusion, holding the bank bound by Arnold's acts largely on the authority of two cases, both of which are plainly distinguishable from the one at bar. In Pennsylvania Oil Co. v. Pure Oil Co., 195 Pa. 388, a general manager, with broad powers, and in good faith, sold part of the assets of the company, with knowledge of the other officers, which act was never disaffirmed or questioned by the corporation. Later, an assignee for creditors unsuccessfully attempted to repudiate the agreement without restoring the consideration, on the ground that the transaction had not been ratified at a stockholders' meeting, and it was held he could not do so. In Campbell v. Manatawny B. O. Co., 62 Pa. Superior Ct. 57, the directors of the corporation, owning a tract of mineral land, authorized the sale of a large amount of preferred stock, and the incurring of the expenses necessary to effect this end. The report of an expert, showing the extent of the ore in place, was required. With knowledge of the president, the vice-president and attorney secured the services of one qualified to make a report, and he made his investigation at the office of the company in the presence of the secretary. All of the officers knew that plaintiff was performing the work required, and contracted for, and but one or two other persons had any interest in the corporation. When the task was completed, a bill for services was presented, and no disapproval of the action of the officers in engaging the expert was expressed for more than two years. In allowing a recovery, it was held too late to raise the question of want of authority of those who had acted

for the corporation. Neither of the decisions mentioned is controlling of the present situation.

We deem it unnecessary to discuss other questions raised by this record. The burden was on plaintiff to show that Arnold had authority to make the contract upon which his suit is based, or that his act was subsequently ratified. In the absence of such proof, no recovery could be had, and judgment should have been entered for the defendant notwithstanding the verdict.

The judgment is reversed and here entered for defendant.