## Marian v. Peoples-Pittsburgh Trust Company, Appellant.

654

Argued May 1, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Ella Graubart,* with her *Patterson, Crawford, Arensberg & Dunn,* for appellant.

*Alexander C. Tener,* with him *James R. Van Kirk* and *J. M. Stoner & Sons,* for appellee.

OPINION BY BALDRIGE, J., July 23, 1942:

The plaintiff, Nazareth Marian, sued the Peoples-Pittsburgh Trust Company in assumpsit for a breach of an oral contract to recover for certain borough and school taxes he paid to the borough of Coraopolis. A

verdict in the sum of $678.93 was recovered. This appeal is from the refusal of the court to grant judgment n. o. v. or a new trial.

The plaintiff in 1933 acquired a second mortgage covering certain property in Coraopolis Borough, Allegheny County, owned by Henry V. Walls and Bessie R. Walls, his wife. The defendant held a first mortgage upon the same property and after the mortgagors had defaulted in their payments took possession thereof as mortgagee on November 3, 1933, and until January 1, 1938, collected all rents, paid part of the taxes, something on account of the interest, and maintained the property. The plaintiff in July 1937, pursuant to a letter he received from the defendant, went to its bank and saw Thomas W. Gormly, an employee who had charge of servicing defaulted mortgages. Gormly inquired of the plaintiff whether he desired to protect his second mortgage, and if he did the trust company would require $2100 to pay the back interest, taxes, and that the balance would be appropriated to reduce the first mortgage to approximately $7000. The plaintiff shortly thereafter returned with his attorney to the bank and saw Gormly and J. L. Lyon, another employee of the defendant. It was then agreed that the plaintiff should enter judgment on the bond accompanying the second mortgage, issue an execution, bid in the property at sheriff's sale and upon acquiring title he would make a payment of $2100 to the trust company. The trust company through Gormly in turn agreed to extend the first mortgage for a term of three years, change the terms so that the plaintiff could pay $90 per month on account of principal and interest; and to apply the $2100 to defaulted interest, delinquent taxes, and in reducing the principal to approximately $7000.

In due time the property was sold, the plaintiff acquired title, paid the $2100 to the defendant and obtained the following receipt:

"Pittsburgh, Pa. Dec. 4th, 1937.

"RECEIVED of ....... Romano Brandimarti ......
Twenty-one Hundred and No/100 ........Dollars ....
Re mtge A-2581 being new owners payment to reduce
mtge. to approx. 7,000. Interest & taxes to Dec. 1st,
'37 for renewal 3 years @ 6% a 90 per mo. or more,
after Court Approval.

Peoples-Pittsburgh Trust Co.

$2100.00 J. L. Lyon. /s/"

Brandimarti was acting temporarily for, and on behalf
of, the plaintiff.

At the time of the sheriff's sale the county had filed
its claim for the balance of the 1931 and 1932 taxes,
adding thereto interest and penalties approximating
$88. At the request of J. R. Van Kirk, Esq., counsel
for plaintiff, Gormly procured and delivered to him the
trust company's check to pay these taxes. Van Kirk
paid the face amount due on these taxes thus avoiding
the added penalties and interest. The solicitors of the
school district and the borough informed him that pen-
alties and interest would not be added to the school
and borough taxes and the trust company was so noti-
fied. The plaintiff contends that as a result of this
information the borough and school taxes were not
then paid by the defendant in accordance with the
agreement.

The plaintiff subsequently learned that the trust com-
pany had not paid the 1933 and 1934 borough, and 1931,
1932, and 1934 school taxes, and after making repeated
and unsuccessful demands upon the trust company to
pay these taxes, past due when it was a mortgagee in
possession of the property and receiving the rents there-
from, he, in order to save penalties of accruing interest,
paid these past due taxes and then brought suit.

The appellant's argument embraces four propositions:
(1) the contract was unenforceable as it was subject to
the approval of the courts, which was not obtained;

(2) its terms were too indefinite and uncertain to be enforceable; (3) there was a failure upon the part of the plaintiff to show the employees of the bank had authority to enter into the contract; and (4) a want of proof of ratification.

(1) It is well to note at the beginning of our legal discussion that the defendant was not sued as a custodian or trustee of the mortgage pool but in its corporate capacity. It is true the alleged contract provides for the courts' approval. Concededly, however, it was the defendant's duty to obtain that approval. This was required because the trust company's first mortgage was held by it in a mortgage pool which was being liquidated under the supervision of the orphans' court and the Court of Common Pleas of Allegheny County. We do not think that it lies in the appellant's mouth to question the validity of the contract because it failed to discharge a duty which it assumed and thereafter accepted the payments of interest and the principal in full in accordance with the terms of the contract with which the plaintiff had fully complied. The courts were endeavoring to protect this pool by having the mortgage liquidated to the best advantage. This was accomplished as the mortgage was paid in full.

It is stated in *Kefover et ux. v. Potter Title and Trust Company*, 320 Pa. 51, 61, 181 A. 771: "While it does prohibit payments from the proceeds of the mortgage pool, it does not forbid the transfer and purchase of interests in the pool, nor does it forbid the repayment of a participant in the pool by the trust company from its own funds. Hence the trust company's performance of its obligation will neither violate nor circumvent the order of the orphans' court."

This defendant having received the fruits of a legal contract should not be permitted to set up its own dereliction of duty to avoid paying its obligation: *Lemmon v. The East Palestine Rubber Company*, 260

Pa. 28, 103 A. 510; *Cameron v. Christy*, 286 Pa. 405, 133 A. 551; *Roberts' Trust Estate*, 316 Pa. 545, 175 A. 869.

(2) The contract sued upon was oral but the testimony offered by the plaintiff shows its scope, that the terms agreed upon were definite, and the purposes were mutually understood. The defendant's answer is that there was no evidence to show what taxes were due in July 1937 when the agreement was made, the amount of funds in the rent account which was to be applied to the payment of the indebtedness due, or the size of the first mortgage; that as a result of the want of information there were uncertain and unknown elements involved in the contract.

It is inconceivable that Gormly, who was in charge of the servicing of delinquent mortgages for the trust company, and Lyon, who worked with him, did not have knowledge of these matters. They had possession of the defendant's books and records, which certainly contained all the information respecting those alleged uncertainties. Gormly dictated the terms of the agreement and knew, or should have known, the amount of money that was necessary to place this mortgage on a sound investment, which was accomplished and the contract fully executed. This case does not come within that line of cases cited by the appellant of which *Briggs v. Morris*, 244 Pa. 139, 90 A. 532; *Farren v. McNulty*, 277 Pa. 279, 121 A. 501; and *Seiss v. McClintic-Marshall Corporation*, 324 Pa. 201, 188 A. 109, are examples.

(3) Equally untenable is appellant's contention that the contract was unauthorized. It is averred in the 14th paragraph of plaintiff's statement, which was offered in evidence, that Gormly was the "duly authorized employee and agent" of defendant. This was not denied in the affidavit of defense. As noted heretofore, Gormly admitted that he was in charge of the servicing of delinquent mortgages, including those in a pool

wherein was the Walls mortgage. He unquestionably had the authority, and did receive the $2100 paid to him by the plaintiff. The only reasonable inference is that Gormly was performing his usual duties and that the apparent scope of his authority included the making of this contract. A corporation is not permitted to receive for a long period of time the benefits of an agent's act under a contract entered into in good faith and at the same time repudiate his authority. That is repugnant to one's sense of justice: *Presbyterian Board v. Gilbee*, 212 Pa. 310, 61 A. 925; *Lemmon v. The East Palestine Rubber Company*, supra, p. 33; *Bowman v. Cochran Coal Company*, 77 Pa. Superior Ct. 118, 121.

(4) The trust company asserts further that Marian cannot rely on a ratification of the contract as the principal lacked knowledge of its terms. Ratification was not squarely raised in the court below or expressly submitted to the jury. Little importance, if any, seemed to have been placed on this defense. The proof showed that Marian made numerous, unacceded to demands on the trust company through its authorized agent to pay the taxes for which this suit was brought. The defendant's conduct, including its refusal to pay the taxes, its accepting the payments on account of the mortgage for three years, and other attending circumstances strongly indicate that it was fully aware of this contract and its terms. Affirmance of the contract may be established by conduct of the purported principal manifesting its approval thereof: Restatement, Agency, §93. Our conclusion is that this was a valid contract binding the defendant: *Campbell v. Manatawny Bessemer Ore Co.*, 62 Pa. Superior Ct. 57; *Kelly v. Burnham, Williams & Company*, 248 Pa. 223, 93 A. 949; *Cohen v. A. F. Bornot Bros. Co.*, 80 Pa. Superior Ct. 251.

We have examined *Kelly, Murray, Inc., v. Lansdowne Bank & Trust Co.*, 299 Pa. 236, 149 A. 190; *First Na-*

660

*tional Bank of Hooversville v. Sagerson et al.,* 283 Pa. 406, 129 A. 333; *Severance, Trustee, v. Heyl & Patterson, Inc.,* 123 Pa. Superior Ct. 553, 187 A. 53, and the other cases cited by the appellant but we think they do not rule this case.

The appellant touches lightly on the plaintiff's being estopped from claiming reimbursement. That defense was not embodied within its statement of the questions involved. We have given the matter consideration and find nothing inconsistent in plaintiff's conduct that affects his right to recover.

Judgment is affirmed.