Alter, Appellant, *v.* Logan Trust Company et al.

Argued September 27, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*D. J. Snyder*, with him *Fred B. Trescher* and *Kunkle & Trescher*, for appellant.

*Robert W. Smith*, with him *Benjamin H. Thompson* and *Smith, Best & Horn*, for appellees.

OPINION BY MR. JUSTICE JONES, November 9, 1948:

This is an appeal from a judgment of compulsory nonsuit entered in an action of assumpsit. The plaintiff sued to recover damages for the defendants' breach of an alleged oral agreement said to confer upon the plaintiff a right of redemption to a certain piece of real estate

which one of the defendants had acquired at a sheriff's sale upon an execution issued on an unpaid judgment against the plaintiff in favor of the same defendant.

On May 16, 1930, W. Riley Alter, the plaintiff, was the owner of two improved tracts of land in the city of New Kensington, Westmoreland County. One of such properties was known as the Alter Building; the other was a lot and dwelling. The Alter Building property was encumbered by a first mortgage to the Metropolitan Life Insurance Company in the sum of $150,000 as security for a bond indebtedness originally in like amount whereon judgment had been entered. The property was also encumbered by a second mortgage to The Logan Trust Company, one of the defendants, in the sum of $20,000 as security for a bond whereon judgment had, likewise, been entered. On May 16, 1930, the plaintiff conveyed the Alter Building property in trust to The Logan Trust Company to receive and apply the income from the property to the payment of taxes, insurance and upkeep and in reduction of the indebtedness above mentioned.

On August 15, 1931, The Logan Trust Company entered into a voluntary liquidation agreement with The Logan National Bank and Trust Company, the other defendant. Thereby The Logan Trust Company assigned all of its assets, including notes owing by the plaintiff and his bond and mortgage, to The Logan National Bank and Trust Company, the latter company assuming liability for the indebtedness of The Logan Trust Company. In furtherance of the liquidation so provided for, the plaintiff entered into a second trust agreement with The Logan National Bank and Trust Company on November 23, 1932. Therein, it was agreed that The Logan Trust Company should convey the title to the Alter Building property (which it held as trustee) to The Logan National Bank and Trust Company upon the same terms and conditions as were contained in the original trust agreement between the plaintiff and The

Logan Trust Company. Both of the trust agreements contained provisions for terminating the trusts.

In April of 1935 The Logan Trust Company caused an execution to issue upon its judgment against Alter and had the sheriff levy upon the Alter Building property which was duly advertised for sale and was thereafter sold at sheriff's sale on May 3, 1935, the purchaser being The Logan Trust Company. On the day prior to the sheriff's sale, to wit, on May 2, 1935, Alter and The Logan Trust Company had entered into a written agreement whereby it was agreed that, in consideration of the trust company's cancellation and discharge of all of Alter's indebtedness to it (which at that time amounted to $57,453.40), Alter would not delay the sheriff's sale and he thereby further expressly relinquished to the trust company any and all interest which he might have in the Alter Building property.

The plaintiff bases his present action upon an alleged oral agreement which he says was entered into between him and the defendant banks, the latter acting by one Walter N. Gabel, on or about May 1, 1935. Gabel was then vice president and treasurer of The Logan Trust Company and vice president and cashier of The Logan National Bank and Trust Company. According to the terms of the oral agreement, as the plaintiff avers them, he agreed not to delay the sheriff's sale and to relinquish any and all interest which he might have in the Alter Building property in consideration whereof the defendant banks were to cancel his indebtedness to them. It is apparent that, up to this point, the provisions of the alleged oral agreement do not differ materially from the analogous provisions of the subsequent written agreement of May 2, 1935. The appellant avers, however, that the alleged oral agreement further provided that for one year he should have the right to redeem and reacquire the Alter Building property upon assuming liability for the mortgage indebtedness owing to the Metropolitan Life Insurance Company and by pay-

ing the defendant banks the sum of $30,000 for which the banks would transfer the title to the property in question to the plaintiff or to any purchaser he produced who would assume the first mortgage and pay the banks the sum of $30,000. The plaintiff further avers that he did produce a purchaser who was willing to satisfy the redemption conditions of the alleged oral agreement and who would also have transferred to him a piece of real estate in Pittsburgh worth $25,000. It is in that amount that the plaintiff seeks damages in the instant suit for the defendants' refusal and failure to perform the relevant provisions of the alleged oral agreement.

At trial the plaintiff testified in substantiation of the oral agreement as pleaded; and, in cross-examination by the defendants, he identified the written agreement of May 2, 1935, between him and The Logan Trust Company. This agreement was offered by the defendants and received in evidence over the plaintiff's objection in connection with the defendants' cross-examination of the plaintiff. At the conclusion of the plaintiff's case, the defendants moved for a compulsory nonsuit on three grounds, viz.,—(1) that the plaintiff had failed to prove Gabel's authority to enter into the alleged oral agreement in behalf of the defendants; (2) that even if Gabel had such authority, the alleged oral agreement became merged in the subsequent written agreement of May 2, 1935; and (3) that the alleged oral agreement was concerned with the transfer of an interest in realty and, being parol, did not satisfy the requirements of the Statute of Frauds.

The learned trial judge granted the defendants' motion and entered the nonsuit. In the opinion thereafter filed in support of the refusal of the plaintiff's motion to take off the nonsuit, the learned court below based its action principally on the ground that the plaintiff had failed to establish Gabel's authority to make the alleged oral agreement for the defendant banks and,

also, to some extent on the ground that the alleged oral agreement had become merged in the written agreement of May 2, 1935.

It was, of course, incumbent upon the plaintiff to prove the asserted authority of Gabel in the premises (see *Kelly, Murray, Inc. v. Lansdowne Bank & Trust Co.*, 299 Pa. 236, 240, 149 A. 190, and *Humphrey v. Brown*, 291 Pa. 53, 59, 139 A. 606) as well as the nature and extent of any such authority (*Interstate Securities Company v. Third National Bank*, 231 Pa. 422, 429, 80 A. 888). The plaintiff manifestly failed to discharge his duty in such regard. The provisions of the liquidation agreement of August 15, 1931, between the banks, upon which the plaintiff relied for such proof, was wholly ineffectual for the purpose. Because the banks, in that agreement, had constituted Gabel and one Campbell co-trustees with power to sell, at their own discretion, "real estate . . . owned by the Trust Company and held in its own name or in trust for its use and benefit", the appellant argues that Gabel thereby had authority to dispose of the Alter Building property. The answer to that contention is two-fold. First, the real estate of Alter which The Logan Trust Company held, it held as trustee for Alter and not for its own use and benefit. The Alter property did not, therefore, come within the class of realty which the liquidating trustees were empowered to sell; and, in the second place, the asserted oral agreement was not made with Gabel and Campbell, the co-trustees, but, allegedly, with Gabel alone. There is, therefore, nothing in the case to support a finding that The Logan Trust Company expressly authorized Gabel to sell the Alter Building or to procure a purchaser of that property.

The appellant also contends that Gabel had inherent authority to enter into the alleged oral agreement by virtue of his official positions with the defendant banks. It is a complete answer to that contention merely to point out that "It is the general and well-settled rule

that a bank officer has no power to consent to any arrangement which will impair the security or collateral of the bank": *Bernatovich v. Davis*, 342 Pa. 86, 92, 19 A. 2d 925, citing 4 Zollman on Banks and Banking (Perm. Ed.), Sec. 2229. In the present instance, if effect were given to the alleged oral agreement, the result would be that, on behalf of his principal, Gabel accepted from the plaintiff debtor $30,000 in discharge of an indebtedness of $57,453.40 for which the mortgaged property was security. Nor is there any merit in the appellant's further contention that Gabel had either apparent or implied authority and the cases which he cites in such connection are readily distinguishable.

In view of the fact that absence of authority in Gabel alone justified the action of the learned court below, it becomes unnecessary for us to consider or pass upon the merit of either of the other two reasons advanced by the defendants in support of their motion for nonsuit or the incidental question raised by the appellant concerning the reception in evidence of the written agreement of May 2, 1935, in the plaintiff's case.

Judgment affirmed.