## Rizzi, Appellant, *v.* American Russian Political & Beneficial Club.

Argued November 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (WOODSIDE, J., absent).

*Melvin B. Bassi,* for appellant.

*Paul N. Barna,* with him *Barna and Barna,* for appellee.

OPINION BY MONTGOMERY, J., December 12, 1962:

This is an appeal from an order refusing to remove a compulsory nonsuit entered in an action of assumpsit. Appellee, a nonprofit corporation, had a general construction contract with S.E.T. Corporation for the erection of a building. Appellant, as a subcontractor, agreed with S.E.T. Corporation to perform part of the work for $5,200, which agreement provided for partial payments as the work progressed. S.E.T., being insolvent at the time, defaulted on the second payment of $2,000 ($2,125 had been paid previously), and appellant stopped work for that reason. However, at this time most of the work had been completed. All that remained to be done was to polish the terrazzo floors which had been laid by appellant. This would have required three or four days work by five men at a cost to appellant of $300 to $400.

Appellant's claim against appellee is based on the following conversations (interpreting the evidence in appellant's favor), viz.: Immediately following the default by S.E.T., appellant notified appellee's President Kovalik of same and of his intention to stop work; at that time the president told appellant they were holding $12,000 of S.E.T. money and that everyone would get paid. Two months later President Kovalik and his brother, who was also an officer, came to

appellant's home and asked him to finish the work, promising that ". . . we get you full check; all the contract will be paid", and, "You come finish the job and we pay you the full bill, what you got coming, as soon as you finish". At that time appellant was asked to supply and install a piece of slate on a riser along the bar, which had not been included in the contract. Appellant's corroborating witness testified to the last conversation, repeating the words of the president as ". . . the work needed to be completed because they expected some equipment to arrive and the floors needed to be finished, and payment would be made by the club."

Appellant completed the work, purchased the slate at a cost of $92.50 and delivered it, but was prevented by appellee from installing it.

The lower court nonsuited appellant because it considered the evidence insufficient to establish a new contract between appellant and appellee other than one to guarantee the payments due appellant from S.E.T. Corporation, which, not being in writing, was unenforceable under the Statute of Frauds; and further, because it disclosed no authority from the corporation to the president or his brother to negotiate such a contract.

Giving our attention first to the second reason, we fail to find in the record any participation in the negotiations with appellant by anyone on behalf of the appellee except its President Kovalik and his brother. Appellant's counsel argues that its directors participated, but there is no evidence to support this position. Kovalik's brother, described as secretary or treasurer, was the only identified other person present at any of the discussions. Although two other men were stated to be present at one of the conversations, neither was identified.

In the absence of any evidence of action by the appellee's board of directors, we must conclude that its president, with or without its secretary or treasurer, did not have the authority to bind the corporation to a contract with appellee for payment of the balance due on the contract between appellant and S.E.T. Corporation, regardless of whether that contract was one of guarantee or a new and direct obligation. At best, officers of corporations, in the absence of authorization by by-laws or resolution of the board of directors, have no authority beyond that which may be implied from the duties which the corporation imposes upon them. In the present case there is a complete absence of evidence that either President Kovalik or his brother had the duty to have appellee's building erected. All of the negotiations alleged by appellant, including the additional slate, were related to the completion of the building. This was more than a routine transaction. *Sayre Land Company v. Sayre Borough*, 384 Pa. 534, 121 A. 2d 579; *Kelly, Murray, Inc., v. Lansdowne Bank & Trust Co.*, 299 Pa. 236, 149 A. 190; *Interstate Securities Company v. Third National Bank*, 35 Pa. Superior Ct 277. Furthermore, there is no acquiescence indicated on the part of the corporation in the action of its president or secretary-treasurer. It would be unreasonable and unrealistic to charge the corporation with the assumption of an obligation of over $3,000 merely to have appellant finish $300 to $400 worth of work. It could easily have secured the services of another contractor to finish the work and withhold sufficient money from the last payment due S.E.T. Corporation to cover such expenditures.

In the light of our conclusion that appellant's negotiations were with persons without authority, we deem it unnecessary to discuss or resolve the other issue concerning the nature of the alleged contract or the effect the Statute of Frauds had on it.

Order refusing to remove compulsory nonsuit affirmed.